ANN ARBOR HOUSING COMMISSION v WELLS

Docket No. 208665. Submitted January 11, 2000, at Lansing. Decided April 21, 2000, at 9:25 A.M. Leave to appeal sought.

The Ann Arbor Housing Commission brought an action in the 15th District Court against Terri Wells, seeking to terminate pursuant to 42 USC 1437d($l$)(5), now 42 USC 1437d($l$)(6), the defendant's tenancy in a unit of federally subsidized public housing because the defendant was in breach of the lease agreement by virtue of illicit drug dealing conducted in the unit by the defendant's brother, a guest of the defendant at the leased premises. The district court entered a judgment of eviction based on a jury verdict in favor of the plaintiff. The Washtenaw Circuit Court, Donald E. Shelton, J., affirmed, rejecting the defendant's contention that the jury should have been instructed that tenancy could not be terminated when a tenant did not know of a guest's drug dealing and had no control over the guest. The defendant appealed by leave granted.

The Court of Appeals *held*:

42 USC 1437d($l$)(5) provided in part that any drug-related criminal activity on or near public housing premises engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control shall be cause for termination of tenancy. This statutory language evinces clear congressional intent to authorize termination of tenancy regardless of whether the tenant was aware that a guest in the tenant's household was conducting drug-related criminal activity on the leased premises. Thus, even purportedly innocent tenants may be evicted. Affirmed.

LANDLORD AND TENANT — FEDERALLY SUBSIDIZED PUBLIC HOUSING — DRUG-RELATED CRIMINAL ACTIVITY BY GUESTS — EVICTION OF TENANTS.

Drug-related criminal activity in a unit of federally subsidized public housing engaged in by a guest of a tenant shall be cause for termination of the tenancy regardless of whether the tenant knew or should have known of the activity (42 USC 1437d[$l$][5], now 42 USC 1437d[$l$][6]).

*Hamilton, McDonald & Carter* (by *Frederick L. McDonald*), for the plaintiff.

Michigan Clinical Law Program (by *Paul D. Reingold*), for the defendant.

Before: WHITBECK, P.J., and HOEKSTRA and OWENS, JJ.

PER CURIAM. Months after providing defendant a thirty-day notice of termination, plaintiff filed a complaint to terminate defendant's tenancy in a federally subsidized public housing unit. A jury found in plaintiff's favor, and the district court entered a judgment of eviction. Defendant appealed this judgment to the circuit court, which affirmed. Defendant now appeals by leave granted. We affirm.

I

Defendant rented from plaintiff a federally subsidized housing unit where she and her children have lived since 1991. In March or April 1996, defendant's brother, who had been in a homeless shelter, moved into her unit on a temporary basis. In June 1996, Ann Arbor police officers raided defendant's unit, telling her that a named individual was selling drugs from her unit. However, the name given was that of defendant's son, who had been in prison for approximately two years at the time of the raid. Approximately one month after the raid, the police came to defendant's apartment and told her that her brother had been selling drugs from her apartment. An Ann Arbor police officer had made controlled purchases of crack cocaine from her brother in the vicinity of defendant's unit. At some point after the June raid, defendant asked her brother to move out.

After a jury trial, which resulted in a judgment of eviction, and an unsuccessful appeal to the circuit

court, defendant appeals to this Court by leave granted. Defendant claims that the trial court erred in failing to hold that a public housing tenant could breach the lease only if the tenant knew or should have known of illegal activity of the tenant's guest and failed to take reasonable steps to stop it, and that the trial court erred in failing to give a corresponding jury instruction on the law. We disagree and affirm.

II

In a case of first impression in Michigan, we must determine whether, under federal public housing law, a public housing agency (PHA) can evict a tenant pursuant to the requirements of 42 USC 1437d(*l*)(5)[1] when there is no evidence that the tenant knew or should have known of the illegal drug activity, and regardless of whether the tenant took prompt measures to stop the activity. We review issues of statutory interpretation de novo. *Faircloth v Family Independence Agency*, 232 Mich App 391, 406; 591 NW2d 314 (1998).

Recently, in *Rucker v Davis*, 203 F3d 627 (CA 9, 2000), a federal circuit court addressed whether a tenant must be personally aware of drug-related criminal activity engaged in by a household member on or near the premises to be evicted, and in doing so interpreted the statutory provision at issue in the present case, subsection 1437d(*l*)(5). *Id.* at 636. The *Rucker* court, in an exhaustive opinion, held that even purportedly "innocent tenants" may be evicted because

---

[1] Section 1437d(*l*)(5) was redesignated as subsection *l*(6) in 1998, but the language remained unchanged. We will continue to refer to this provision as subsection *l*(5).

"the express statutory language . . . evinces a clear congressional intent to authorize termination of tenancy regardless of whether the tenant was aware that his household member or guest was selling, manufacturing, distributing, or using drugs." *Id.* at 637. We agree with the *Rucker* court's analysis[2] and adopt its reasoning as our own.[3] Accordingly, we hold that a public housing tenancy may be terminated under subsection 1437d($l$)(5) regardless of whether the tenant had knowledge of the drug-related activity conducted on or off the premises by the tenant, a member of the tenant's household, or a guest or another person under the tenant's control. Thus, defendant's public housing tenancy was properly terminated in the present case despite defendant's lack of knowledge of

---

[2] As noted by the *Rucker* court, few other courts have addressed this precise issue, and the courts that have addressed it have reached conflicting conclusions:

Compare *City of South San Francisco Hous Auth v Guillory*, 41 Cal App 4th Supp 13, 18-19 (Cal App Dep't Super Ct 1995) (concluding that "drug-related activity by any member of a tenant's household is cause *per se* for termination of the lease where . . . the housing authority receives federal funds"), with *Charlotte Hous Auth v Patterson*, 120 NC App 552; 464 SE2d 68, 72 (1995) ("With no mention of personal fault, the statute and lease at issue in this case provide that criminal activity by a member of a tenant's household is cause for ending a tenancy. However, as noted above, the legislative history reveals a clearly expressed legislative intent that eviction is appropriate only if the tenant is personally at fault for a breach of the lease . . . ."). [*Rucker, supra* at 637, n 8.]

We are unaware of any federal courts besides *Rucker* that have addressed this precise issue.

[3] We note that during oral argument defendant brought to the attention of this Court and relied on the federal district court's unpublished decision in *Rucker v Davis*, unpublished opinion of the United States District Court, N.D. California, issued June 19, 1998 (No. C 98-00781 CRB). That case was overturned in a published opinion and it is the pertinent portions of the reasoning in this subsequent, published opinion that we discuss and adopt as our own.

drug-related activity on the premises by defendant's guest.[4]

III

In the present case, defendant argues that an innocent tenant may not be evicted because federal law requires knowledge or culpability to terminate a public housing tenancy. Defendant relies on 42 USC 1437d($l$)(5), which at the time the lease was signed provided:

> [A]ny criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.[5]

According to defendant, the legislative history and the structure of the act show a congressional intent when using the phrase "under the tenant's control" to protect innocent tenants from eviction based on illegal

---

[4] Arguably, even if this Court did not agree with *Rucker, supra,* we would be bound by that decision because "[t]he interpretation of a federal statute is a question of federal law," *Auto-Owners Ins Co v Corduroy Rubber Co,* 177 Mich App 600, 604; 443 NW2d 416 (1989), and where a federal appellate court has spoken on the topic and no conflict among the federal courts exists, state courts are bound by the authoritative holding of the federal court. See *Schueler v Weintrob,* 360 Mich 621, 633-634; 105 NW2d 42 (1960); see also *Young v Young,* 211 Mich App 446, 450; 536 NW2d 254 (1995) ("Where there is no conflict, state courts are bound by the holdings of federal courts on federal questions."). We are unaware of any conflict among the federal appellate courts.

[5] In 1996, this provision was amended to substitute "on or off such premises" for "on or near such premises." This change in no way affects the present case because the drug-related activity occurred on the premises.

activity by their guests. Defendant further claims that the definition of "control" implies knowledge of the actions of the person controlled. Defendant contends that she could not be evicted because her brother, who the parties do not dispute was a guest in her household,[6] was not under her control. A similar argument regarding control was raised in *Rucker, supra,* and for the same reasons provided by the *Rucker* court, we reject this argument.

In *Rucker, supra* at 636, the court addressed subsection 1437d($l$)(5), noting that judicial construction is inappropriate where there is no ambiguity in the words of a statute. Analyzing subsection 1437d($l$)(5), the court explained:

> The plain statutory language thus makes clear that Congress intended that there be cause for termination of tenancy when three conditions are met: there is (1) drug-related criminal activity, (2) on or off the public housing premises, (3) engaged in by the tenant, any household member, or any guest or other person under the tenant's control. [*Rucker, supra* at 636.]

As in the *Rucker* case, the first two conditions are not contested here;[7] however, the third prong is in dispute. Also as in *Rucker*, the argument focuses on the statutory term "control." In disavowing the tenant's argument in *Rucker* that "cause for termination exists

---

[6] Although defendant's brother temporarily was living in defendant's household and arguably could have been considered a member of the household, both parties refer to him as a guest throughout their analyses. Thus, for purposes of our analysis, this Court considers defendant's brother a guest. We note that defendant's failure to notify the landlord of the change in her "household composition" is arguably a violation of the lease, but that is not an issue before us on appeal.

[7] The parties do not dispute that defendant had no knowledge of her brother's drug sales.

only if the tenant could realistically exercise 'control' over the drug-dealing or drug-using household member or guest" and that the mother does not have "control" over her son, the court stated:

> Applying basic principles of grammar, we conclude that this construction of the public housing lease statute is untenable. The clause at issue—"public housing tenant, any member of the tenant's household or any guest or other person under the tenant's control"—includes three separate categories of people: (1) the tenant, (2) any household member, and (3) any guest or other person under the tenant's control. The phrase "under the tenant's control" has no relationship whatsoever to either of the first two categories—tenant or household member.
>
> With respect to the third category, implicit in the phrase "any guest or other person under the tenant's control" is that guests are *per se* under the tenant's control. "Control" is a legal concept; tenants have control over their guests. [*Id.* at 636-637.]

In the present case, defendant seems to suggest that she had no control over her brother, who was a guest in her home, and therefore she may not be evicted. On the basis of the clear statutory language and the *Rucker* analysis, we find defendant's argument without merit.

Defendant contends throughout her argument that knowledge of the drug-related criminal activity is necessary for her to be evicted. However, the *Rucker* court addressed this same argument and found it contrary to the plain language of the statute:

> [T]he express statutory language . . . evinces a clear congressional intent to authorize termination of tenancy regardless of whether the tenant was aware that his household member or guest was selling, manufacturing, distributing,

or using drugs. Thus, the statute makes clear that even pur-
portedly "innocent tenants" may be evicted. [*Id.* at 637.]

While further addressing the plain language of the statute, the *Rucker* court explained:

> A statute covering "any drug-related criminal activity" has
> the exact scope as one covering "any drug-related criminal
> activity *including that of which the tenant is unaware*" or
> "any drug-related criminal activity *regardless of the tenant's
> knowledge thereof.*" These italicized hypothetical clauses
> are mere surplusage—they add nothing of substance. Just
> as section 1437d(*l*)(5) covers drug-related criminal activity
> on weekends even though the statute does not explicitly
> refer to "any drug-related criminal activity *including that
> which occurs on weekends*," the statute covers conduct that
> the tenant does not know of even though it does not explic-
> itly refer to "any drug-related criminal activity *including
> that of which the tenant is unaware.*" The hypothetical
> "including" clauses merely enumerate subsets of cases
> already covered by the statute as actually written. [*Id.* at
> 637-638.]

In other words, the plain language of the statute
allows for the eviction of purportedly "innocent
tenants."

We note that in the present case the tenant focuses
on her "innocent" status when it comes to knowing
about the drug-related criminal activity as well as her
"prompt and effective steps to resolve the problem."
To be sure, an eviction under the circumstances
presented in this case is a harsh result; an apparently
blameless tenant is evicted for actions of which she
had no knowledge. However, we note, as did the
*Rucker* court, that the PHA need not utilize the
extreme measure of eviction. Instead, even when
there is cause to evict, the PHA has discretion to con-
form its actions to the particular circumstances of the

case. *Rucker, supra* at 638-640; 24 CFR 966.4(1)(5)(i). Addressing the tenant's focus on the eviction of "innocent tenants," the *Rucker* court wrote:

> What tenants either fail to recognize—or attempt to obscure—is that the question of whether there is *cause* to evict is wholly separate from whether the PHA will actually evict. Section 1437d(*l*)(5) merely requires that local PHAs make drug-related criminal activity "cause for termination of tenancy." 42 USC 1437d(*l*)(5). Where there is cause for termination, a PHA *may* evict, but it is *not required* to evict in all instances in which there is cause to do so.
>
> The public housing lease statute, although it authorizes eviction in a broad range of cases, is notably silent as to when termination of tenancy is required. By structuring the statute in this way, Congress implicitly conveyed discretion to HUD and PHAs to make termination decisions in individual cases. [*Rucker, supra* at 638 (emphasis in original).]

In the present case, where defendant had no knowledge of the drug-related activity of her guest, plaintiff had discretion to evict defendant, but such action was not mandated by statute.

Defendant further argues that the overall structure of the act supports a conclusion that plaintiff was required to show knowledge on defendant's part. Specifically, defendant points to 42 USC 1437d(r), which, at the time she was evicted, provided a procedure by which a tenant evicted for drug-related activity might become eligible for public housing:

> Any tenant evicted from housing assisted under this subchapter by reason of drug-related criminal activity . . . shall not be eligible for housing assistance under this subchapter during the 3-year period beginning on the date of such eviction, unless the evicted tenant successfully completes a rehabilitation program approved by the public housing

agency (which shall include a waiver of this subsection if the circumstances leading to eviction no longer exist).

Defendant argues that this provision would allow a culpable tenant to be "rehabilitated," and thus be eligible for reentering public housing, quicker than a nonculpable tenant. However, this interpretation ignores the parenthetical at the end of the subsection, which allows rehabilitation to be waived "if the circumstances leading to eviction no longer exist." Moreover, the *Rucker* court noted that a section of the act in effect through 1996, 42 USC 1437d(c)(4)(A)(iii), reinforces its conclusion that subsection 1437d(*l*)(5) authorizes termination of tenancy regardless of the tenant's knowledge of the drug-related criminal activity. *Rucker, supra* at 640-641. The court explained that if an innocent tenant could not have been evicted in the first place, then there would have been no need for Congress to write subsection 1437d(c)(4)(A)(iii), which specifically waives the three-year prohibition period from receiving a statutory preference in applying for the public housing for members of the family of an individual who neither participated in nor had knowledge of the drug-related criminal activity that formed the basis of the original eviction. *Id.*[8] We conclude in the present case that defendant's contention that the structure of the statute supports her argument is without merit.

---

[8] The *Rucker* court also concluded that the civil forfeiture statute, 21 USC 881(a)(7), which includes a specific exception for "innocent tenants," makes it clear that Congress knows how to legislate an "innocent tenants" exception, and therefore the absence of such language in the public housing lease statute indicates Congress' intent not to create such an exception with regard to public housing evictions. *Rucker, supra* at 641.

IV

In summary, we agree with the *Rucker* court's analysis and adopt the quoted language from that decision as our own. Accordingly, we hold that a public housing tenancy may be terminated regardless of whether the tenant had knowledge of the drug-related activity conducted on or off the premises by the tenant, a member of the tenant's household, or a guest or another person under the tenant's control. Consequently, defendant's argument that the district court failed to give proper jury instructions because it did not require the jury to find that she knew of the illegal activity is without merit.

Affirmed.