**WELLSTON HOUSING AUTHORITY,**
**Plaintiff/Appellant,**

v.

**Marilyn MURPHY,**
**Defendant/Respondent.**

**No. ED 83156.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 23, 2004.

Thomas E. Osterholt, Jr., & Thomas D. Veltz, St. Louis, MO, for appellant.

Mary E. De Vries, St. Louis, MO, for respondent.

WILLIAM H. CRANDALL, JR., Judge.

Plaintiff, Wellston Housing Authority, appeals from the judgment of the trial court, in a court-tried case, in favor of defendant, Marilyn Murphy, in an action for unlawful detainer. We affirm.

The facts establish that beginning in January 2002, defendant, Marilyn Murphy (hereinafter tenant), entered into a subsidized federal housing lease with defendant, the Wellston Housing Authority (hereinafter Housing Authority), for the rental of an apartment located at 1527 Wellston Place, Number 103. The terms of the lease provided that the lease could be terminated for criminal activity by the tenant, any household member, a guest, or other person under the tenant's control, "including but not limited to: (i) any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other public housing residents; (ii) any drug-related activity on or

off such premises." The lease also imposed on the tenant the obligation to assure that the tenant, any household member, a guest, or another person under tenant's control not to engage in "(a) [a]ny criminal activity that threatens the health, safety, or right to peaceful enjoyment of the Management's public housing premises by other residents or employees of Management, or (b) [a]ny drug-related criminal activity on or off such premises ... or (c) [a]ny illegal use of a controlled substance, or any abuse of alcohol...."

Housing Authority became aware that Morris Lockett, who had felony convictions and had been released from prison recently, was visiting tenant. In June, tenant met with the executive director of Housing Authority to discuss Lockett. Tenant said that Lockett was merely a visitor. When tenant inquired about adding him to the lease, however, she was informed of his criminal record. Housing Authority orally told tenant that Lockett was barred from the property because of his criminal record. Tenant agreed to not allow Lockett onto the property. On July 28, 2002, Lockett visited tenant and Housing Authority had him arrested for trespassing.

On July 29, 2002, the property manager for Housing Authority delivered to tenant a notice of termination of the lease for allowing a person with a criminal history to reside in her unit. The lease was terminated effective August 2, 2002. Tenant refused to leave the premises. On August 7, 2002, the property manager hand delivered to tenant a supplemental notice of

termination, notifying her that her lease was terminated for "having an unauthorized male ... with a criminal record residing in your apartment and/or inviting a male ... with a criminal record to your unit after being told of his criminal conviction and that he was not allowed to come on any Wellston Housing Authority's property, and/or placing other residents in danger because of [his] prior criminal activity, all in violation of [the] lease...." The notice stated that tenant had to deliver possession of the premises within three days of receiving the notice or by August 10. Tenant still refused to vacate the apartment. In December 2002, Housing Authority filed an unlawful detainer action against tenant.

After a trial, the trial court entered judgment in favor of tenant. Housing Authority appeals from the judgment.[1]

■ In appeals from unlawful detainer actions, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We review the evidence in the light most favorable to the prevailing party, giving that party the benefit of all reasonable inferences and disregarding contrary evidence and inferences. *Bach v. McGrath*, 982 S.W.2d 734, 735 (Mo.App. E.D.1998).

■ In its first point, Housing Authority contends that the trial court erred in entering judgment in favor of tenant because it was entitled to terminate her lease because of the extensive criminal record of her guest.[2] The trial court, however,

---

1. This court has jurisdiction to hear this appeal from the judgment of the associate circuit court. Section 534.060 RSMo 2000 provides that "[i]f the [unlawful detainer] case is heard initially before an associate circuit judge who has been specially assigned to hear the case on a record or before a circuit judge, the case shall be heard and determined under the same practice and procedure as would

apply if the case was being heard upon an application for trial de novo...." Here, the associate judge was specially assigned to hear the case on the record and any appeal from the judgment of the associate circuit court must be taken to this appellate court.

2. 24 C.F.R. section 5.100 defines "guest" as "a person temporarily staying in the unit with the consent of a tenant or other member of

found that "there was no credible evidence adduced at trial that there was any drug crime, violent crime or other criminal conduct committed by the Tenant or by a member of her household or a guest, including Morris Lockett.... There was no evidence presented that Lockett's presence caused any 'emergency situation to arise.' "

Housing Authority first argues that 42 U.S.C. section 1437d(*l*)(6) grants it the discretion to terminate tenant's lease. That statute requires public housing leases to "provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." Housing Authority says that Lockett's convictions for second degree murder, sexual assault, and burglary demonstrated that he was a threat to the safety of the other tenants of the premises. It argues that Lockett's criminal record constituted "any criminal activity" under the federal statute.

Here, however, the evidence did not establish that Lockett's criminal record fell within the "criminal activity" intended by the statute. Lockett's criminal conduct did not occur during the term of tenant's lease. Lockett's criminal activity and his sentences therefor occurred prior to his becoming tenant's guest during the term of tenant's lease. It strains construction to construe "any criminal activity ... of a guest" to include criminal conduct that occurred prior to the tenant's lease term.

Housing Authority cites several decisions to support its position that it can terminate a public housing tenancy on the basis of the criminal activity of a tenant's guest. But, the cases are distinguishable from the present case because the criminal conduct in those cases did not occur prior to the tenant's lease term, but occurred contemporaneously in time with the effective period of the tenant's lease. *See Dept. of Housing and Urban Development v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002) (lease termination proper where members of the household or guests engaged in drug-related activity during leases); *Burton v. Tampa Housing Authority*, 271 F.3d 1274 (11th Cir.2001) (lease termination proper where tenant's son, who was added to the lease as a household member, engaged in drug-related activity); *Housing Authority of Joliet v. Chapman*, 336 Ill.App.3d 347, 269 Ill. Dec. 382, 780 N.E.2d 1106 (2002) (lease properly terminated where tenant's son, who was still residing in the unit, was in possession of drugs); *Ann Arbor Housing Commission v. Wells*, 240 Mich.App. 610, 618 N.W.2d 43 (2000) (lease properly terminated where tenant's brother, who was tenant's guest on a temporary basis, was selling drugs); and *Powell v. Housing Authority of the City of Pittsburgh*, 571 Pa. 552, 812 A.2d 1201 (2002) (lease properly terminated where tenant's teenage sons committed carjacking about one mile from the apartment). The criminal activity that serves as the basis for the termination of the lease must not be remote in time to the lease itself, but must occur when the lease is in effect.

Housing Authority also argues that because it had discretion either to reject the application for public housing of a person

the household who has express or implied authority to so consent on behalf of the tenant."

with a criminal record or to prohibit individuals with criminal records from entering onto public housing property, it could terminate tenant's lease for her permitting Lockett onto the property as her guest. Assuming, without deciding, that Housing Authority had the power to reject Lockett as a tenant and/or to bar him from the property, it does not also mean that Housing Authority could terminate tenant's lease because Lockett was on the property as her guest. Housing Authority's rights regarding Lockett are separate and distinct from their rights regarding the termination of tenant's lease on the basis of Lockett's presence on the Property. Housing Authority next contends that 24 C.F.R. section 966.4(*l*)(5)(iv) bolsters its position that it is permitted to terminate tenant's lease. That regulation reads as follows:

> Use of criminal record. If the PHA [public housing authority] seeks to terminate the tenancy for criminal activity as shown by a criminal record, the PHA must notify the household of the proposed action to be based on the information and must provide the subject of the record and the tenant with a copy of a criminal record before a PHA grievance hearing or court trial concerning the termination of tenancy or eviction. The tenant must be given an opportunity to dispute the accuracy and relevance of that record in the grievance hearing or court trial.

We disagree with Housing Authority that this section entitles it to terminate tenant's lease. The regulation is under 24 C.F.R. section 966.4(*l*)(5), which is entitled "PHA termination of tenancy for criminal activity or alcohol abuse." This regulation sets forth guidelines for the public housing authority if it is going to use a criminal record as evidence of criminal activity. Although the regulation indicates that a criminal record may be used to establish

that criminal activity occurred, the conduct sought to be proved by the record must still constitute the "criminal activity" necessary to terminate the lease. In accordance with our discussion above that criminal activity must occur during the lease term, the prior criminal acts of tenant's guest did not constitute criminal activity under the statute and thus did not constitute criminal activity under the corresponding regulation. 24 C.F.R. 966.4(*l*)(5)(iv) cannot be used as the basis to terminate tenant's lease.

The trial court did not err in determining that Housing Authority could not terminate tenant's lease on the basis of her guest's criminal record. Housing Authority's first point is denied.

In its second point, Housing Authority challenges the trial court's finding that the notice to tenant was not reasonable. In view of our holding under the first point that there was no basis for terminating tenant's lease, any claim of error regarding the adequacy of the notice is moot. We need not address Housing Authority's second point on appeal.

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, P.J.,
Concurs in Result in Separate Concurring Opinion.

LAWRENCE E. MOONEY, J.,
Concurs.

CLIFFORD H. AHRENS, Presiding Judge, concurring in result.

I concur in the result reached by the majority opinion, because I believe that the evidence in this case, when viewed in the light most favorable to the prevailing party, does not show that the health, safety, or right of peaceful enjoyment of the residents or of the employees of Housing

Authority was threatened by defendant's guest, as required by the federal statute. The Housing Authority's efforts to promote the welfare and safety of its tenants are commendable. But there was no evidence in the record of the nature of the complaints against tenant's guest. Accordingly, the trial court did not err in entering judgment for tenant.

I write separately because I believe that on the record in this case, this court does not need to adopt a bright-line test that limits the construction of the statutory term "any criminal activity" to conduct during the term of the lease. We need not decide whether, on different facts, past criminal conduct of a guest might be sufficient to justify termination of a tenant's lease in a case where there was evidence that the guest caused a current threat to the health, safety, or right to peaceful enjoyment of the premises by other tenants. In all other respects, I concur in the majority opinion.