FIRST DIVISION

No. 1-09-1717

| KEITH LANDERS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO HOUSING AUTHORITY, a Municipal | ) | |
| Corporation, | ) | The Honorable |
| | ) | William O. Maki, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE LAMPKIN delivered the opinion of the court:

Respondent, Chicago Housing Authority (CHA), a municipal corporation, appeals the circuit court's judgment in favor of petitioner, Keith Landers, on his petition for *certiorari*, thereby reversing the CHA's denial of petitioner's application for public housing. The CHA contends the circuit court erred in its decision. Based on the following, we affirm.

FACTS

In February 1995, petitioner filed an application with the CHA for public housing. Petitioner was placed on a wait list. In November 2008, petitioner was notified that he had reached the top of the wait list and was eligible for housing assuming he passed various background checks. The CHA used the private firm Screening Reports, Inc., to conduct a criminal background check. The criminal background report revealed that petitioner had been

arrested 34 times for various felony and misdemeanor charges. As a result, the CHA rejected petitioner's application for housing, citing a pattern of arrest and/or conviction for certain criminal activities. In response, petitioner requested that the CHA hold an informal hearing pursuant to the CHA's administrative hearing process so that he could provide documentation to dispute the accuracy of the criminal background report. See 24 C.F.R. §§960.204(c), 906.208(a)(2008); 42 U.S.C. §1437d(q)(2)(2006).

A hearing was held on February 25, 2009. According to the parties' stipulated statement of facts,[1] petitioner produced a fingerprint-based criminal history report from the Chicago police department (CPD) and a revised report from Screening Reports, Inc. The revised report from Screening Reports, Inc., showed that petitioner had been arrested for four felony offenses and nine misdemeanor offenses, as well as for four civil ordinance violations. The offenses included misdemeanor battery, misdemeanor assault, misdemeanor theft, criminal trespass, being a fugitive from justice, possession of a controlled substance, possession of drug paraphernalia, and drinking on a public way. All of the charges, however, had been dismissed except for one civil offense for drinking on a public way. The CPD report

---

[1]The stipulation was entered pursuant to section 3-108 of the Administrative Review Law. 735 ILCS 5/3-108 (West 2008).

showed that petitioner had no prior convictions.

According to the parties' stipulation, petitioner testified at the mitigation hearing that the original criminal background report was inaccurate because it contained a high volume of arrests attributable to his twin brother. When asked by CHA representatives whether he committed the criminal offenses listed in the revised report, petitioner maintained that he did not commit the acts for which he was arrested. Petitioner testified that the police frequently questioned and arrested him merely because he was homeless and often gathered him in with other homeless individuals being questioned and arrested by the police. Petitioner testified that nearly all of the charges listed in his revised background report were dismissed at the initial court hearing because they lacked merit.

On March 2, 2009, the CHA sent petitioner a letter of denial. The letter stated that "[b]ased on the information and documents that [petitioner] provided, and the additional research, the CHA has determined and can document a pattern of arrest and/or conviction for certain criminal activities." The letter further informed petitioner that his name had been removed from the CHA's wait list.

On March 23, 2009, petitioner filed a petition for *certiorari* in the circuit court requesting reversal of the CHA's

1-09-1717

decision.[2]  In response, the CHA filed a section 2-619 (735 ILCS 5/2-619 (West 2008)) motion to dismiss, arguing that petitioner's arrest record provided sufficient support for the CHA's decision.

On June 5, 2009, the circuit court conducted a hearing.  At the outset, the circuit court denied the CHA's motion to dismiss and proceeded to consider the petition for *certiorari*.  The circuit court ultimately granted *certiorari*, concluding that, although the CHA was entitled to review the arrest record of an applicant, petitioner did not pose a threat to the other housing residents where his arrests were dismissed and were largely based on his homelessness.  The circuit court granted the CHA's motion to stay its June 5, 2009, order.  The CHA appeals the circuit court's June 5, 2009, order.[3]

---

[2]Pursuant to the Intergovernmental Cooperation Act (5 ILCS 220/1 *et seq.* (West 2008)), CHA tenant grievances are heard and adjudicated by the department of administrative hearings for the city of Chicago.

[3]This court granted leave to file a brief *amicus curiae* in support of petitioner pursuant to Supreme Court Rule 345 (210 Ill. 2d R. 345) to the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School, Uptown Peoples' Law Center, Chicago Area Fair Housing Alliance, Chicago Coalition for the Homeless, Legal Action Center, National Law Center on

-4-

1-09-1717

DECISION

The CHA operates under the Illinois Housing Authorities Act (310 ILCS 10/1 *et seq.* (West 2008)).  The Illinois Housing Authorities Act did not adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)); therefore, the appropriate vehicle for review is a common law writ of *certiorari*, as was done in this case.  Outcom, Inc. v. Illinois Department of Transportation, 233 Ill. 2d 324, 333, 909 N.E.2d 806 (2009).  We, however, treat this appeal as we would any other appeal for administrative review.  Outcom, Inc., 233 Ill. 2d at 337.  " 'In administrative cases, we review the decision of the administrative agency, not the determination of the circuit court.' "  Outcom, Inc., 233 Ill. 2d at 337, quoting Wade v. City of North Chicago Police Pension Board, 226 Ill. 2d 485, 504, 877 N.E.2d 1101 (2007).

At issue is whether the CHA had the authority to reject petitioner's application for housing based on his arrest record. The CHA contends its decision was accurate where petitioner's arrests in the preceding three years demonstrated that he was a risk to the health, safety, and welfare of other tenants. Petitioner responds that the CHA's decision rejecting his

---

Homelessness and Poverty, and the Sargent Shriver National Center on Poverty Law.

application was contrary to the governing federal statutes and regulations that permit denial of an application only where the applicant has engaged in past criminal activity. Petitioner attests that mere arrests such as his do not constitute criminal activity.

The issue before us involves a mixed question of fact and law. "[A] mixed question is one 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' " AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 392, 763 N.E.2d 272 (2001), quoting Pullman-Standard v. Swint, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982). As a result, we review the CHA's denial of petitioner's application under the clearly erroneous standard. Outcom, Inc., 233 Ill. 2d at 337. An agency's decision is clearly erroneous only where, after reviewing the entire record, the reviewing court is " 'left with the definite and firm conviction that a mistake has been committed.' " Outcom, Inc., 233 Ill. 2d at 337, quoting AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 395, 763 N.E.2d 272 (2001).

The CHA, as a federally-financed housing authority and pursuant to the United States Housing Act of 1937 (Housing Act) (42 U.S.C. §1437 *et seq.* (2006)), promulgated rules and regulations regarding selection and eligibility for admission to public housing within its Admissions and Continued Occupancy Policy (ACOP).[4]  The majority of the ACOP is a compilation of the regulations of the Department of Housing and Urban Development (HUD).  See 24 C.F.R. §5.100 *et seq.* (2008); 24 C.F.R. §960.101 *et seq.* (2008).

Relevant to this appeal, the ACOP provides that "[a]ll applicants will be screened in accordance with HUD regulations and sound management practices.  Screening will include a criminal background, credit, and residential history check." FY2007 ACOP §II.F.  During the screening process, applicants are required "to demonstrate their ability to comply with the essential obligations of tenancy" which includes "[t]o not engage in criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents, staff, or people in the immediate vicinity."  FY2007 ACOP §II.F(1)(h), citing 24 C.F.R. §960.203 (2006).

---

[4]The ACOP applicable to this appeal, and the version appearing in the record on appeal, is the amended 2007 ACOP.

1-09-1717

According to the screening criteria, the CHA will reject an application where the CHA "can document via police arrest and/or conviction documentation" that "[a]n applicant *** has a criminal history in the past three years that involves crimes of violence to persons or property as documented by police arrest and/or conviction documentation."  FY2007 ACOP §II.G.14(d), citing 24 C.F.R. §906.203(c)(3) (2006) ("[a] history of criminal activity involving crimes of physical violence to persons or property or other criminal acts which would adversely affect the health, safety or welfare of other tenants").  Crimes of violence are described as including, but not limited to:

> "homicide or murder; destruction of property or vandalism; burglary; armed robbery; theft; trafficking; manufacture, use, or possession of an illegal drug or controlled substance; threats or harassment; assault with a deadly weapon; domestic violence; sexual violence, dating violence, or stalking; weapons offenses; criminal sexual assault; home invasion; stalking; kidnapping; terrorism; and manufacture, possession, transporting or receiving explosives."
> FY2007 ACOP §II.G.14(d).

However, this general rule for rejecting applicants is limited when based on an arrest report.  The ACOP expressly provides that "[i]f the CHA rejects an applicant based upon a police arrest

-8-

report pending case information, the applicant's name will remain on the wait list until documentation is presented showing the outcome of the case." FY2007 ACOP §II.G.14(f).

In instances where the screening process reveals negative information, an applicant is provided with a chance to present verifiable mitigating information. FY2007 ACOP §II.H.1; see 24 C.F.R. §960.204(c) (2006). The CHA considers "the time, nature, and extent of the applicant's conduct and any factors that might indicate a reasonable probability of favorable future conduct" (FY2007 ACOP §II.H.1), as well as whether the applicant can provide documentation of rehabilitation (FY2007 ACOP §II.H.2.). When an applicant is deemed ineligible for admission, an informal hearing may be requested. 24 C.F.R. §960.208(a) (2006).

After reviewing the applicable ACOP provisions, we conclude that convictions and verifiable arrests for violent crimes, including but not limited to those listed and drug-related criminal activity or a pattern of illegal drug use, constitute the "history of criminal activity" that the CHA finds prohibitive in its screening process. See FY2007 ACOP §II.G.14(d); 24 C.F.R. §§960.203, 960.204 (2006).

Here, petitioner's original background check revealed negative information. The CHA complied with the ACOP by satisfying petitioner's request for an informal mitigation hearing. At that hearing, petitioner produced an accurate arrest

report, which revealed that, within the relevant three-year time period, he had two felony arrests, one of which was for possession of an unknown quantity of a controlled substance and the other was for being a fugitive from justice, and seven minor misdemeanor arrests, including battery, assault, criminal trespass, and possession of drug paraphernalia. Our review of the offenses purely based on title, as we have no other facts to review, demonstrates that none of these *arrests* seemingly rise to the level of the requisite violent crimes or drug-related criminal activity necessary to constitute a history of criminal activity.

More importantly, however, section II.G.14(d) of the ACOP limits the CHA's authority to deny an application based upon an *arrest*, such that "the applicant's name will remain on the wait list until documentation is presented showing the outcome of the case." FY2007 ACOP §II.G.14(f). Petitioner presented the only documentation in this case in the form of a corrected criminal background report and a CPD criminal history report. These reports showed that all of petitioner's prior arrests, not only those in the relevant three-year time period, had been dismissed, and petitioner had never been convicted of a crime. In addition, petitioner testified at the informal mitigation hearing that he did not commit any of the acts for which he was arrested; rather,

petitioner said that he was arrested merely as a result of the circumstances of being a homeless man. These facts were unrebutted by the CHA. In fact, the CHA did not present any evidence to dispute petitioner's documentation or testimony.

Moreover, petitioner's criminal background report was bare bones, in that it merely contained defendant's name, the charged offenses, and the dates of the dispositions. There were no police reports or arrest reports to provide any context for the arrests. As a result, the *only* facts upon which the denial could have been based were those presented by petitioner. The outcome of the arrests, as stated in section II.G.14(f) of the ACOP, was the dispositions. FY2007 ACOP §II.G.14(f). The disposition of each arrest was a dismissal. Therefore, according to section II.G.14(f) of the ACOP, petitioner's arrests could not be a basis for the rejection of his application. The information provided by petitioner and the lack of information added by the CHA should have been considered at the informal mitigation hearing to inform "the time, nature, and extent of the applicant's conduct" (FY2007 ACOP §II.H.1), such that there was no verifiable criminal conduct to support the rejection of petitioner's application. Instead, petitioner's name should have remained on the wait list if his housing unit was no longer available.

1-09-1717

The CHA cites <u>Perry v. City of Milwaukee Housing Authority</u>, No. 06-C-0101 (E.D. Wis. April 18, 2007), to support its contention that evidence of a conviction is not required to reject an applicant. We agree that evidence of conviction is not a prerequisite for denying an application for public housing; however, we find that <u>Perry</u> does not support the CHA's denial of petitioner's application in this case.

In <u>Perry</u>, the United States District Court for the Eastern District of Wisconsin reviewed the City of Milwaukee Housing Authority's (CMHA) denial of benefits to an applicant pursuant to section 8 of the Housing Act (42 U.S.C. §1437f (2006)) and 24 C.F.R. §982.553 (2006), which grants a public housing authority (PHA) the authority to prohibit admission where the applicant has engaged in "other criminal activity which may threaten the health, safety, or right of peaceful enjoyment of the premises." <u>Perry</u>, No. 06-C-0101. The CMHA's denial was based on the applicant's two prior arrests for domestic battery. <u>Perry</u>, No. 06-C-0101.

Unlike the CHA in the instant case, the CMHA provided copies of criminal complaints and arrest reports to support its decision. <u>Perry</u>, No. 06-C-0101. Additionally, in contrast to the instant case, during his informal hearing, the applicant did not deny the accuracy of the supporting documentation; rather, he argued that his arrests were irrelevant because he was never

-12-

convicted of the offenses. Perry, No. 06-C-0101. The hearing officer upheld the CMHA's decision, noting that the facts in the criminal complaints demonstrated that the offenses occurred, but that the victim refused to press charges. Perry, No. 06-C-0101. The Eastern District of Wisconsin agreed. Perry, No. 06-C-0101. In stark contrast to our case, the CMHA's decision was supported with facts regarding the circumstances of the applicant's domestic battery arrests.

In another case, albeit for the termination of public housing, the Missouri Court of Appeals considered whether the PHA there, the Wellston Housing Authority (WHA), had the authority to terminate a tenant's lease based on a guest's criminal record. Wellston Housing Authority v. Murphy, 131 S.W.3d 378 (Mo. App. 2004). The reviewing court concluded that, pursuant to the Housing Act (42 U.S.C. §1437(d)(l)(6) (2000)) and 24 C.F.R. §966.4(l)(5)(iv), the WHA did not possess the authority to terminate the tenant's lease where the guest's criminal record did not provide evidence of criminal activity during the tenant's lease term. Wellston Housing Authority, 131 S.W.3d at 380-81. Similar to 24 C.F.R. §906.204(c), the relevant provision in Wellston Housing Authority, i.e., 24 C.F.R. §966.4(l)(5)(iv) (2004), provides tenants with the opportunity to dispute the accuracy of the criminal record at issue. As in our case, the

criminal record there did not provide evidence of the relevant criminal activity and, therefore, was ineffectual in supporting the PHA's decision.

Moreover, we are not persuaded by the CHA's reliance on Talley v. Lane, 13 F.3d 1031 (7th Cir. 1994). In Talley, the CHA denied a handicapped individual's application for housing based on a lengthy arrest and conviction record. Talley, 13 F.3d at 1032. The CHA supported its decision with the applicant's arrest and conviction record, which revealed convictions for theft, rape, possession of burglary tools, possession of cocaine, and unlawful use of a weapon, as well as outstanding warrants for robbery and armed robbery. Talley, 13 F.3d at 1033 n.2. Following an informal hearing during which the denial was affirmed, the applicant filed suit against the CHA, alleging discriminatory tenant selection practices in violation of the Fair Housing Act (32 U.S.C. §3601 et seq. (1988)), section 504 of the Vocational Rehabilitation Act (29 U.S.C. §794 (1994)), civil rights statutes (42 U.S.C. §§§§§§ 1981, 1982, 1983, 1985, 1986, 1988), and the due process and equal protection clauses of the Constitution (U.S. Const., amends. XIV, IV). Talley, 13 F.3d at 1032. The Seventh Circuit affirmed the dismissal of the applicant's complaint because he failed to link his disability to the reason why his application was rejected by the CHA where he

contended that his application to the disability program was rejected solely on the basis of his criminal record. Talley, 13 F.3d at 1034. The Seventh Circuit concluded that the applicant's claim of being unlawfully discriminated against based on his criminal record had no arguable basis in the laws cited by the applicant. Talley, 13 F.3d at 1034-35.

We do not dispute the CHA's ability to reject an applicant based on a criminal record that includes convictions and substantiated arrests. We, however, highlight the fact that the applicant in Talley had an arrest and conviction record showing *convictions* for a number of violent offenses. The Talley application was not merely rejected based on a number of minor felony and misdemeanor *arrests* that were dismissed without prosecution, as was the case for our petitioner here.

We recognize that the ACOP does not provide an evidentiary standard for rejecting an application based on a history of criminal activity; however, the CHA did not even meet the evidentiary standard for civil cases, namely, the preponderance of the evidence. See, *e.g.*, Department of Central Management Services v. Illinois Labor Relations Board, 382 Ill. App. 3d 208, 220-21, 888 N.E.2d 562 (2008); Hearne v. Chicago School Reform Board of Trustees of the Board of Education, 322 Ill. App. 3d 467, 480, 749 N.E.2d 411 (2001); In re Interest of Marcus H., 297

Ill. App. 3d 1089, 1098, 697 N.E.2d 862 (1998). The CHA had no evidence whatsoever that petitioner engaged in criminal activity where the outcome of his arrests was the consistent dismissal of the charges.

We find further support within the criminal context for our conclusion that petitioner's dismissed arrests do not constitute a history of criminal activity and therefore cannot support the rejection of his application for public housing. For example, arrests cannot be used for purposes of impeachment; rather, only convictions that are relevant to a witness's credibility are admissible impeachment evidence. People v. Brown, 61 Ill. App. 3d 180, 183 (1978); see People v. Pecoraro, 175 Ill. 2d 294, 309, 677 N.E.2d 875 (1997). Moreover, although a prior arrest may be used as aggravating evidence at a sentencing hearing, it must be deemed relevant and reliable to be admissible. People v. Williams, 272 Ill. App. 3d 868, 879, 651 N.E.2d 532 (1995). Absent evidence of reliability "the consideration of a mere arrest is prejudicial error [citation] unless the record demonstrates that the weight placed on the improper factor by the court was insignificant. [Citation.]" Williams, 272 Ill. App. 3d at 879. In capital sentencing hearings, "[h]earsay evidence of other crimes which did not result in prosecution or conviction is *** admissible" if there is a demonstration of relevancy and reliability. People v. Hudson, 157 Ill. 2d 401, 450, 626 N.E.2d

1-09-1717

161 (1993).

Simply stated, there was no evidence that petitioner was a potential threat to the health, safety, and welfare of the public housing community. The sheer number of petitioner's arrests does not establish a history of criminal activity. While we agree that the CHA need not demonstrate a history of convictions to establish a history of criminal activity, the CHA, by its own standards, was required to determine that the "outcome" of petitioner's arrests demonstrated a history of criminal activity that could potentially threaten the health, safety, and welfare of the premises. We conclude that the CHA failed to support its rejection of petitioner's application. The CHA's decision was, therefore, clearly erroneous.

We need not address petitioner's constitutional challenges raised for the first time on appeal because we have decided the case on other grounds. Beelman Trucking v. Illinois Workers' Compensation Comm'n, 233 Ill. 2d 364, 380, 909 N.E.2d 818 (2009) ("[i]t has long been recognized that constitutional issues will be reviewed by this court only when the case may not be decided on nonconstitutional grounds").

CONCLUSION

We affirm the circuit court's June 5, 2009, order, reversing the CHA's denial of petitioner's application for housing.

Affirmed.

GARCIA, P.J., and PATTI, J., concur.

-17-

1-09-1717

KEITH LANDERS,

Petitioner-Appellee,

v.

CHICAGO HOUSING AUTHORITY, a Municipal Corporation,

Respondent-Appellant.

No. 1-09-1717

Appellate Court of Illinois
First District, FIRST DIVISION

September 20, 2010

Justice Bertina E. Lampkin authored the opinion of the court:

Presiding Justice Garcia and Justice Patti concur.

Appeal from the Circuit Court of Cook County.
The Hon. William O. Maki, Judge Presiding.

**COUNSEL FOR APPELLANT**
Chicago Housing Authority, Chicago, IL 60605
OF COUNSEL: Pamela Cotten and Thomas King

**COUNSEL FOR APPELLEE**
Legal Assistance Foundation of Metropolitan Chicago,
Chicago, IL 60604
OF COUNSEL: Richard M. Wheelock