(No. 106260.—

OUTCOM, INC., d/b/a Porlier Outdoor Advertising, Appellee, v. THE ILLINOIS DEPARTMENT OF TRANSPORTATION *et al.*, Appellants.

*Opinion filed May 21, 2009.*

326

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Janon E. Fabiano and Brett E. Legner, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Jill R. Rembusch, of Summers Compton Wells PC, of St. Louis, Missouri, for appellee.

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

At issue in this appeal is whether defendant, the Illinois Department of Transportation (IDOT),[1] must issue a permit to plaintiff, Outcom, Inc., a Missouri corporation doing business as Porlier Outdoor Advertising, for the erection of two billboards in the Village of Caseyville, Illinois. IDOT denied plaintiff's permit applications, concluding that plaintiff had failed to demonstrate that the proposed billboard site was continuously used for commercial or industrial activities since September 21, 1959, as required by the Highway Advertising Control Act of 1971 (225 ILCS 440/1 *et seq.* (West 2006)) and IDOT regulations (92 Ill. Adm. Code §522.20 *et seq.*, amended at 32 Ill. Reg. 17810, eff. October 30, 2008). The circuit court of St. Clair County disagreed, and ordered IDOT to issue the permits. The appellate court affirmed that ruling. 378 Ill. App. 3d 739.

For the reasons that follow, we reverse the judgments of the appellate court and circuit court, and confirm IDOT's decision denying the permits.

## BACKGROUND

The Highway Advertising Control Act of 1971 (the Act) regulates "the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to Interstate highways and primary highways." 225 ILCS 440/1 (West 2006). Implementation and enforcement of the Act resides in IDOT. 225 ILCS 440/14.01 (West 2006).

---

[1]The named defendants include IDOT, its secretary, and two of its engineers. For ease of discussion, we will refer simply to IDOT.

The Act permits outdoor advertising in "business areas." 225 ILCS 440/1, 4.04 (West 2006). Generally, with respect to signs along interstate highways, an area is a "business area" only if the land was used or zoned for commercial or industrial activities from September 21, 1959. 225 ILCS 440/3.12 (West 2006); 92 Ill. Adm. Code §522.20, amended at 32 Ill. Reg. 17810, eff. October 30, 2008.[2]

With limited exception not relevant here, no sign may be erected without first obtaining a permit from IDOT. 225 ILCS 440/8 (West 2006); 92 Ill. Adm. Code §522.30, amended at 30 Ill. Reg. 15792, eff. October 1, 2006. Where an application for a permit is incomplete, contains incorrect information, or does not comply with the Act or IDOT's rules and regulations, IDOT must notify the applicant in writing of its intent to deny the permit application and state the reasons for that action. 92 Ill. Adm. Code §522.80(a), amended at 30 Ill. Reg. 15792, eff. October 1, 2006. The applicant may challenge the intent to deny, but IDOT's decision on a challenged application is final. 92 Ill. Adm. Code §522.80(a), amended at 30 Ill. Reg. 15792, eff. October 1, 2006.

In accordance with IDOT's permitting procedures, on July 26, 2004, plaintiff submitted two applications for outdoor advertising permits to erect two signs in Caseyville along Interstate 64. According to the applications,

---

[2]The September 21, 1959, date that appears in the Act and administrative regulations relates to the Federal-Aid Highway Act of 1959, which authorized certain bonus payments from the federal government, for highway construction costs, to states that agreed to prohibit billboards within 660 feet of highways in areas not zoned either industrial or commercial. *Covenant Media of Illinois v. City of Des Plaines*, 496 F. Supp. 2d 960, 962 n.2 (2007). See also *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 170 (1992) (discussing the interplay between the federal Highway Beautification Act of 1965 and the present Act, and the payment of federal highway funds).

the signs would be located eight-tenths and nine-tenths of a mile east of Highway 111, approximately 510 feet apart. The proposed signs consisted of painted panels, each panel 48 feet wide and 14 feet high, and rising 60 feet into the air on a free-standing structure. Each sign would be illuminated with eight 400-watt lights.

As shown in photographs attached to plaintiff's applications, a radio tower for WEW 77 Radio is located on the proposed billboard site which, according to other documents plaintiff provided to IDOT, was placed there sometime between December 14, 1955, and January 17, 1956. Plaintiff's photographs also reveal the presence of a steel trailer, which houses the station's transmitter equipment or ground system. The transmitter is operated remotely from the station's St. Louis, Missouri, studio. Painted on the side of the trailer are the station's call letters. Although the ground system has been at the site since the tower was placed there, the documents attached to plaintiff's applications do not indicate when the trailer, as depicted in the photographs, was first placed on the site.

The applications indicate that the billboard site is located within the Village of Caseyville and that the site is presently zoned industrial. The site, however, was not part of the village on September 21, 1959. A document from the county assessor's office, which plaintiff attached to its applications, reveals that the proposed billboard site is part of a 20-acre farm.

On August 10, 2004, IDOT notified plaintiff in writing of its intent to deny the permit applications. IDOT cited plaintiff's "[f]ailure to provide proof that the temporary trailer, serving as the transmitter and ground system for WEW 77 Radio, does meet the definition of a commercial/industrial site," within the meaning of IDOT's regulations. IDOT noted:

"Section 522.20 of the Illinois Administrative Code defines 'commercial or industrial areas' as 'those whose land use is

devoted to commerce, industry, trade, manufacturing, highway service, highway business, warehouses, offices, or similar uses *** and does not include the following: transient or temporary activities not involving permanent buildings or structures ***.' "

IDOT requested that plaintiff "provide proof that the proposed property meets the definition of commercial or industrial activities and that the trailer, as shown in [plaintiff's] submitted photos, is more than the housing for the transmitter equipment."

Plaintiff challenged IDOT's intent-to-deny notice. In a letter to IDOT dated September 14, 2004, plaintiff's president, Brent M. Porlier, stated:

"From your August 10, 2004 letter, I gather the only issue at hand is whether the land use has been and is now considered business, commercial or industrial in nature.

Section 522.20 *** list[s] land uses that are not considered business, commercial or industrial and your August 10, 2004 letter recites one of the mentioned exclusions: 'transient or temporary activities not including permanent buildings or structures.' I understand a denial of our two applications would be based on this exclusion.

If you look closely at the building on our property, one can only come to the conclusion that it is a permanent structure. The physical structure is made of steel, is permanently secured/moored to the ground and is serviced with utility(s). The building is also identified commercially as 'WEW 77 Radio'. This building is regularly visited by maintenance personnel. While their visits are not as frequent as say a retail business, nothing in Section 522.20 requires personnel to be at the site for a specified number of hours each day nor a specified number of days each month. Moreover, the building and tower are vital to the radio station operations. The building and tower are primary, not incidental to WEW's ability to conduct business, just as their in-town operation is primary to station operations. In this sense, both parts are inextricably linked." (Emphases in original.)

On October 5, 2004, IDOT denied plaintiff's permit applications. IDOT noted that the site had only recently

been annexed into Caseyville, and that prior to annexation, the land use of the site was agricultural. "The actual presence of the tower," according to IDOT, "does not satisfy the requirements of section 522.20 of the Illinois Administrative Code *** that requires that *** the land on September 21, 1959 <u>was and has continuously been used as business, commercial or industrial</u>." (Emphasis in original.) IDOT noted that like public utilities, radio towers are found in all areas—agricultural, industrial, commercial, and residential—and do not necessarily define the site on which they are built. IDOT also referenced the "Land Use Manual of the American Planning Association," stating that the association categorizes radio towers separately from residential, commercial or industrial categories. As to the presence of the steel trailer, IDOT determined that its permanency did not change IDOT's decision, "given the fact that the site's land use on September 21, 1959 was agricultural and no proof has been presented that the site has been continuously used as an industrial site either through local zoning or through historical documentation."

Thereafter, on November 4, 2004, plaintiff filed a complaint against IDOT in the circuit court of St. Clair County. In count I, plaintiff sought a declaration that (i) the radio tower and attendant structure are not public utilities, but are a private business, commercial, or industrial activity; (ii) the use of the site since prior to September 21, 1959, has been business, commercial, or industrial; and (iii) IDOT's denial of plaintiff's permit applications was improper. In count II, plaintiff sought a writ of *mandamus* commanding IDOT to issue the requested permits. Plaintiff alleged that it complied with all of the requirements of the Act and administrative regulations, and that IDOT's denial of the application "for the reason that the Radio Facilities are a public utility" was improper and without a basis in Illinois law. Ac-

cording to plaintiff, IDOT abused its discretion in denying the permits.

The parties agreed that the pertinent facts were undisputed, and proceeded with cross-motions for summary judgment. The circuit court granted plaintiff's motion and denied IDOT's motion. The court declared that radio towers and attendant structures, in general, and the radio tower and trailer at issue here, in particular, are not public utilities, but are a private business, commercial or industrial activity, and that the site's use since prior to September 21, 1959, has been business, commercial, or industrial. The circuit court concluded that plaintiff had complied with the application requirements for its outdoor advertising signs and had a clear right to the relief requested. The circuit court ordered IDOT to grant plaintiff's permit applications.

IDOT appealed the circuit court's ruling. The appellate court affirmed, holding, "based on the plain language of the Act and regulations, that the operation of a commercial radio tower and transmitter building is a business, commercial, or industrial use of property within the meaning of the Act." 378 Ill. App. 3d at 745.

We allowed IDOT's petition for leave to appeal. 210 Ill. 2d R. 315.

## ANALYSIS

### I. Standard of Review

In order to determine the appropriate standard of review, we find it necessary to clarify the procedural posture of this case and the reviewability of IDOT's decision.

Whether an agency action is reviewable is an issue of statutory construction. *Hanrahan v. Williams*, 174 Ill. 2d 268, 273 (1996). Courts must consider whether the statute which confers power on the agency to act indicates that the legislature intended the agency's deci-

sions to be reviewable. Frequently, the legislature's intent is clear because the agency's enabling statute expressly provides for review under our Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2006)). The Administrative Review Law eliminates the use of *mandamus, certiorari,* injunction and other equitable, statutory and common law actions as a means of reviewing agency decisions, thus providing a single uniform method of review. 735 ILCS 5/3—102 (West 2006); *Marsh v. Illinois Racing Board,* 179 Ill. 2d 488, 493 (1997); *Quinlan & Tyson, Inc. v. City of Evanston,* 25 Ill. App. 3d 879, 883 (1975).

In some instances, however, the enabling statute does not adopt the Administrative Review Law and provides no other method for reviewing the agency's decisions. In such instances, "the writ of common law *certiorari* survives as an available method of review." *Smith v. Department of Public Aid,* 67 Ill. 2d 529, 541 (1977). Accord *Dubin v. Personnel Board,* 128 Ill. 2d 490, 498 (1989); *Hanrahan,* 174 Ill. 2d at 272. Underlying the use of *certiorari* is the presumption that most agency actions are reviewable. *Hanrahan,* 174 Ill. 2d at 273. Where, however, "there is a statutory bar to review or if statutory language commits the agency decision to unreviewable agency discretion," no presumption of reviewability arises. *Hanrahan,* 174 Ill. 2d at 273.

The statute at issue here, the Highway Advertising Control Act, did not adopt the Administrative Review Law and provides no other method to review a decision by IDOT denying a permit application. Whether the presumption of reviewability arises is dependent on the language of the Act. As to permit applications, section 8 of the Act states:

> "No sign *** may be erected after the effective date of this Act without first obtaining a permit from the Department. The application for permit shall be on a form provided by the Department and shall contain such

information as the Department may reasonably require. Upon receipt of an application containing all required information and appropriately executed and upon payment of the fee required under this Section, the Department then issues a permit to the applicant for the erection of the sign, provided such sign will not violate any provision of this Act." 225 ILCS 440/8 (West 2006).

Thus, the statutory language is neutral as to whether IDOT's denial of a permit application is reviewable.

The statute, however, also vests IDOT with the authority to "establish rules and regulations regarding implementation and enforcement" of the Act, provided such regulations are not inconsistent with the Act. 225 ILCS 440/14.01 (West 2006). In accordance with this legislative grant of authority, and consistent with section 8, IDOT adopted various regulations governing the permitting process. See 92 Ill. Adm. Code §§522.20 through 522.90. We direct our attention to section 522.80, which governs the denial of a permit application.

As indicated earlier in this opinion, section 522.80 provides that if a permit application is incomplete, contains incorrect information or is not in compliance with the Act or IDOT's regulations, IDOT's district office where the application was filed must notify the applicant in writing of its intent to deny the permit application and the reasons for that action. The applicant has 30 days to correct deficiencies in the application or challenge the intent to deny. The district will review the challenge and shall either approve or deny the application. Significantly, section 522.80(a) states, "No appeal may be taken from the District's decision on the challenged application." 92 Ill. Adm. Code §522.80(a), amended at 30 Ill. Reg. 15792, eff. October 1, 2006.

The "no appeal" rule might be read as precluding judicial review of a permit application denial. Such a reading, however, assumes that an agency may, through its rulemaking authority, insulate its decisions from

judicial review even where the enabling statute does not, itself, preclude review. The validity of such an assumption is not at all apparent when we consider the purpose of judicial review: to remedy problems arising from an agency's exercise of its frequently considerable discretion. See *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 495-96 (1988) (recognizing the balance that must be struck between judicial intervention in agency actions and the exercise of agency discretion and expertise); 3 R. Pierce, Administrative Law Treatise §§17.1, 17.2 (4th ed. 2002) (discussing the problems of agency discretion and the role of judicial review as a potential solution).

We need not decide, in the context of this case, whether an agency may legitimately adopt a rule barring judicial review of its own decisions because we conclude that the "no appeal" language at issue here only precludes further appeal or review *before the agency*. This conclusion is borne out by IDOT's conduct during the course of this litigation.

In the circuit court, IDOT never argued that its permit denial was unreviewable. In the appellate court, IDOT only challenged the remedy chosen by plaintiff. As the appellate court opinion states:

> "The Department initially argues that a declaratory judgment action is not proper to review the Department's administrative decision denying the permit applications. *** [T]he Department argues that a common law writ of *certiorari* is the appropriate method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law [citation] and provides for no other form of review." 378 Ill. App. 3d at 743.

Thus, IDOT not only implicitly recognized that its permit denial was reviewable, but explicitly stated the appropriate vehicle for review: a common law writ of *certiorari*.

Consistent with its argument in the appellate court, IDOT states in its brief before this court that plaintiff

"seeks judicial review of a final administrative decision, albeit under the guise of a complaint for declaratory judgment and mandamus relief." Noting that the Act did not adopt the Administrative Review Law, IDOT states that "the same standards apply to review of an administrative decision whether the action is brought pursuant to the Administrative Review Law or some other mechanism." IDOT also states in its briefs that it is the agency authorized to make the permit determinations in the "first instance," and that the General Assembly has vested IDOT with "initial jurisdiction" to determine whether to grant a permit. The clear implication is that IDOT envisions that its permit denial is a reviewable decision.

We recognize that IDOT does not make explicit reference in its briefs to the "no appeal" language in section 522.80(a). IDOT does, however, cite to section 522.80(a) when it describes the process governing permit denials. We presume that IDOT, which adopted the "no appeal" language, acted with knowledge of this provision. Accordingly, we conclude that IDOT's denial of plaintiff's permit application is a decision subject to judicial review and that, as set forth in our case law, the appropriate vehicle for review is the common law writ of *certiorari*.

Plaintiff did not seek a writ of *certiorari* and instead filed a complaint for declaratory judgment and a writ of *mandamus*. See *Kohl Outdoor Advertising, Inc. v. Department of Transportation*, 72 Ill. App. 3d 413, 416 (1979) (approving common law writ of *mandamus* to review IDOT decision revoking billboard permit). As already noted, in the circuit court, IDOT did not challenge the method plaintiff chose to review IDOT's decision. When IDOT raised this issue on appeal, the appellate court ruled that IDOT had forfeited any such challenge. 378 Ill. App. 3d at 743.

Irrespective of whether IDOT forfeited review of this issue, our case law is clear that the circuit courts "do not

possess greater authority to review actions by agencies whose final decisions are reviewable through common law methods than the courts have when statutory procedures apply." *Dubin*, 128 Ill. 2d at 498. Moreover, the standards of review in either instance are essentially the same. *Hanrahan*, 174 Ill. 2d at 272. Consequently, although this case comes to us following the affirmance of summary judgment on plaintiff's complaint for declaratory relief and a writ of *mandamus*, we will treat this appeal as we would any other appeal that comes to us on administrative review. "In administrative cases, we review the decision of the administrative agency, not the determination of the circuit court." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007).

The parties are in agreement that IDOT's decision should be reviewed under the clearly erroneous standard applicable to agency determinations that involve mixed questions of law and fact. See *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392 (2001). "[A] mixed question is one 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' " *AFM Messenger*, 198 Ill. 2d at 391, quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982). See also *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998) (applying clearly erroneous standard to mixed question). When an agency decision presents a mixed question of law and fact, its decision will be deemed clearly erroneous "only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger*, 198 Ill. 2d at 395, quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

In reaching its decision on plaintiff's permit applications, IDOT considered whether the facts provided by plaintiff relative to the proposed billboard site met the requirements for a permit, as established by the Act and administrative regulations. Specifically, IDOT considered whether the presence of the radio tower and trailer satisfied the legal requirement that the site was used for commercial or industrial activities. This issue falls squarely within the definition of a mixed question. Accordingly, we agree with the parties that the clearly erroneous standard applies and will review IDOT's decision accordingly.

## II. Forfeiture

Before reaching the merits of this case, we consider plaintiff's claim that IDOT forfeited review of certain issues by failing to raise these issues at the administrative level. Specifically, plaintiff maintains that IDOT notified plaintiff that it intended to deny its application because the structure attendant to the radio tower was not a permanent structure, but later denied the permit for entirely different reasons: because radio broadcasting is a public utility that does not necessarily define the site on which a tower is located, and that proof was thus lacking that the site had continuously been used as an industrial site. Plaintiff argues that IDOT's change in position is inconsistent with its own administrative regulations and this court's rules of forfeiture. See 92 Ill. Adm. Code §522.80, amended at 30 Ill. Reg. 15792, eff. October 1, 2006 (setting forth procedures for denial of permit application); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212-13 (2008) (discussing forfeiture rules applicable to cases on administrative review).

We disagree with plaintiff's reading of the administrative record. As set forth in some detail above, IDOT's notice of intent to deny conveys a less narrow justifica-

tion for its anticipated denial than plaintiff contends. IDOT's notice plainly requested from plaintiff "proof that the proposed property meets the definition of commercial or industrial activities *and* that the trailer \*\*\* is more than the housing for the transmitter equipment." (Emphasis added.) IDOT's notice of intent to deny also made specific reference to section 522.20 of the Illinois Administrative Code, which defines both "business area" and "commercial or industrial activities." IDOT's subsequent denial, based on plaintiff's failure to establish that the site "was and has continuously been used as business, commercial or industrial" in accordance with section 522.20, is not inconsistent with its earlier notice. Although IDOT's denial offered additional support for its decision, we cannot conclude that IDOT's decisionmaking ran afoul of its own regulations or that forfeiture rules apply here.

### III. Permit Applications

Under the Act, outdoor advertising signs adjacent to highways are permitted only in "business areas." 225 ILCS 440/1, 4.04 (West 2006). A "business area" means:

"[A]ny part of an area adjacent to and within 660 feet of the right-of-way which is at any time zoned for business, commercial or industrial activities under the authority of any law of this State; or not so zoned, but which constitutes an unzoned commercial or industrial area as defined in Section 3.11. However, as to signs along Interstate highways, the term 'business area' includes only areas which are within incorporated limits of any city, village, or incorporated town, as such limits existed on September 21, 1959, and which are zoned for industrial or commercial use, or both, *or to portions of Interstate highways which traverse other areas where the land use, as of September 21, 1959, was established by State law as industrial or commercial, or both.*" (Emphasis added.) 225 ILCS 440/3.12 (West 2006).

No dispute exists that plaintiff's proposed billboard site was unincorporated and unzoned on September 21, 1959.

Thus, the site is a "business area" only if "the land use, as of September 21, 1959, was established by State law as industrial or commercial, or both." 225 ILCS 440/3.12 (West 2006). IDOT's regulations clarify the meaning of "business area" for previously unzoned parcels, providing as follows:

"Areas which were unzoned on September 21, 1959 may qualify as business areas along Interstate highways if the applicant can show, based on contemporaneous historical records of State actions (e.g., State sales tax records, required State license fees, etc.) that the land on September 21, 1959 was and has continuously been used as business, commercial or industrial." 92 Ill. Adm. Code §522.20, amended at 32 Ill. Reg. 17810, eff. October 30, 2008.

We note that IDOT's regulations refer to "business, commercial or industrial," whereas the Act refers simply to "industrial or commercial." We do not view the addition of the word "business" as an intent by IDOT to expand the statutory definition of the term "business area." As IDOT recognizes, " '[a]dministrative rules can neither limit nor extend the scope of a statute.' " *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 203 (1989), quoting *Du-Mont Ventilating Co. v. Department of Revenue*, 73 Ill. 2d 243, 247-48 (1978). Indeed, the Act expressly provides that rules and regulations IDOT establishes may not be "inconsistent" with the terms of the Act. 225 ILCS 440/14.01 (West 2006). We further note that the word "business" is commonly used to denote "a commercial or industrial enterprise." Webster's Third New International Dictionary 302 (1993). Thus, we read the word "business" as synonymous with "commercial or industrial," and not as an enlargement of the Act's definition of "business area."

The Act defines "[c]ommercial or industrial activities" as "those activities located within 660 feet of the nearest edge of the right-of-way generally recognized as commercial or industrial by zoning authorities in this

State." 225 ILCS 440/3.10 (West 2006). The statutory definition also lists several activities that are not commercial or industrial:

"(a) Agricultural, forestry, ranging, grazing and farming activities, including wayside fresh produce stands and grain storage bins;

(b) Railroad tracks and minor sidings;

(c) Transient or temporary activities not involving permanent building or structures;

(d) Outdoor advertising structures;

(e) Activities not visible from a main-traveled way;

(f) Activities conducted in a building principally used as a residence." 225 ILCS 440/3.10 (West 2006).

IDOT's definition of "[c]ommercial or industrial activities" substantially mirrors the language of section 3.10 of the Act, but also includes examples of commercial or industrial activity: "land use devoted to commerce, industry, trade, manufacturing, highway service, highway business, warehouses, offices or similar uses ***." 92 Ill. Adm. Code §522.20, amended at 32 Ill. Reg. 17810, eff. October 30, 2008.

Under the statutory and regulatory scheme, plaintiff was required to establish that the proposed billboard site on September 21, 1959, was and has continuously been used as commercial or industrial. Plaintiff could satisfy this requirement by establishing that the activity on the site is "generally recognized as commercial or industrial by zoning authorities in this State" (225 ILCS 440/3.10 (West 2006)), or by pointing to "contemporaneous historical records of State actions (e.g., State sales tax records, required State license fees, etc.)" establishing the same (92 Ill. Adm. Code §522.20, amended at 32 Ill. Reg. 17810, eff. October 30, 2008). According to IDOT's denial letter, plaintiff failed to do either, and thus IDOT refused to issue the requested permits. While IDOT did not dispute that the radio tower has occupied the site since before September 21, 1959, IDOT determined that the mere presence of the tower did not establish that the site was

used for commercial or industrial activities. IDOT compared the radio tower and attendant trailer to public utilities which do not necessarily define the site on which they are located. IDOT further noted that, prior to annexation, the land use was agricultural, notwithstanding the presence of the radio tower. Based on this record, IDOT maintains that its decision denying the permits is not clearly erroneous and urges us to reverse the courts below.

Plaintiff counters that IDOT's decision is based on the faulty conclusion that radio broadcasting is a public utility. Relying on the Illinois Pubic Utilities Act (220 ILCS 5/1—101 *et seq.* (West 2006)), and numerous cases from various jurisdictions, plaintiff argues that IDOT's conclusion is simply wrong and its denial of the permits is clearly erroneous. See *Mammina v. Zoning Board of Appeals*, 110 Misc. 2d 534, 442 N.Y.S.2d 689 (1981); *WANV, Inc. v. Houff*, 219 Va. 57, 244 S.E.2d 760 (1978); *Pennsylvania Public Utility Comm'n v. WVCH Communications, Inc.*, 23 Pa. Commw. 292, 351 A.2d 328 (1976); *McIntire v. Wm. Penn Broadcasting Co.*, 151 F.2d 597 (3d Cir. 1945); *Pulitzer Pub. Co. v. Federal Communications Comm'n*, 94 F.2d 249 (D.C. Cir. 1937). Plaintiff argues, in the alternative, that even if radio broadcasting is a public utility, it is nonetheless a business, commercial or industrial activity, and that nothing in the Act indicates a legislative intent to exclude radio broadcasting from qualifying as such an activity for purposes of establishing a "business area."

We are not persuaded by plaintiff's arguments. IDOT did not declare that radio broadcasting is a public utility. Rather, IDOT concluded that, for purposes of the Act, radio towers are similar to public utilities. That is, radio towers, like public utilities, are necessities and appear in all areas—agricultural, residential, commercial and industrial—and do not necessarily define the use of the

land on which they are located. The authorities cited by plaintiff do not somehow prohibit IDOT from making this comparison and according similar treatment to radio towers as public utilities.

Plaintiff's argument assumes that if radio broadcasting is a commercial activity, the site at issue here automatically qualifies as a "business area" under the Act. We disagree. The issue is not whether radio broadcasting in general is considered a commercial or industrial activity; the issue is whether the mere presence of the radio tower and trailer is an industrial or commercial use of the land, as recognized by local zoning authorities or state action, such that a business area was created. See 225 ILCS 440/3.10 (West 2006); 92 Ill. Adm. Code §522.20, amended at 32 Ill. Reg. 17810, eff. October 30, 2008. At most, plaintiff established that the site has a nexus to commerce or industry. We agree with IDOT that something more than a nexus is needed to demonstrate that the site is used for commercial or industrial activities and thus constitutes a business area.

This conclusion is consistent with the purpose of the Act: the regulation of highway advertising "in order to protect the public investment in such highways, to promote the recreational value of public travel, [and] to preserve natural beauty." 225 ILCS 440/1 (West 2006). While the Act also recognizes the business and economic value of outdoor advertising, the Act is clearly aimed at limiting highway advertising. Indeed, the general rule is that "[s]igns shall *not* be erected or maintained" along highways, unless they fit within one of the Act's express exceptions. (Emphasis added.) 225 ILCS 440/4 (West 2006). Even when an exception applies, the Act regulates the size of the signs, the lighting, the spacing, the placement of the signs at the site, and the number of signs at a given site. 225 ILCS 440/6.01 through 6.03 (West 2006). Thus, we agree with IDOT that "the Act embodies an

aesthetic choice that favors uninterrupted vistas over billboards." Plaintiff's expansive reading of the "business area" exception at issue here would defeat the Act's purpose.

We recognize, as plaintiff argues, that the list of activities set forth in section 3.10 of the Act, that do not qualify as commercial or industrial, does not include radio towers. 225 ILCS 440/3.10 (West 2006). See also 92 Ill. Adm. Code §522.20, amended at 32 Ill. Reg. 17810, eff. October 30, 2008 (setting forth the same exclusions). Generally, where a statute lists the things to which it refers or includes, an inference arises that omissions should be understood as excluded. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 442 (1992). This inference, however, is not a rule of law and does not trump legislative intent. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). Nothing in section 3.10 indicates that the list of noncommercial or nonindustrial activities is intended to be exhaustive. Moreover, the inclusion of radio towers, like the one at issue in this case, is entirely consistent with the overriding purpose of the Act: to limit highway advertising.

Based on our review of the administrative record, the statute, and regulations, we cannot say that IDOT's decision denying plaintiff's permit applications was clearly erroneous. That is, we are not " 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger*, 198 Ill. 2d at 395, quoting *United States Gypsum Co.*, 333 U.S. at 395, 92 L. Ed. at 766, 68 S. Ct. at 542. We therefore reverse the judgments of the appellate court and the circuit court and confirm IDOT's decision.

*Judgments reversed;*
*Department decision confirmed.*