2019 IL App (1st) 190189
Opinion filed: June 21, 2019

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-0189

| | | |
|---|---|---|
| PAT QUINN, TAKE CHARGE CHICAGO COMMITTEE FOR MAYORAL TERM LIMITS AND ELECTED CONSUMER ADVOCATE, MARK WALLACE, ELIZABETH NORDEN, SANDRA FERNANDEZ, GEORGE OTTO, STEPHEN CAXTON-IDOWU, and CHERYL BYERS, | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County.<br><br>No. 2018-COEL-28<br><br>Honorable Maureen O. Hannon, Judge Presiding. |
| Petitioners-Appellants, | ) ) | |
| v. | ) ) | |
| THE BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF CHICAGO ELECTORAL BOARD, and Its Members, MARISEL A. HERNANDEZ, JONATHAN T. SWAIN, and WILLIAM J. KRESSE; and THE BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) | |
| Respondents-Appellees | ) ) | |
| (Brett Allen Czaja and Karen Larson, | ) ) | |
| Objectors-Appellees). | ) ) ) | |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion. Justices Hoffman and Lampkin concurred in the judgment and opinion.

## OPINION

¶ 1    The petitioners-appellants, Pat Quinn, Take Charge Chicago Committee for Mayoral Term Limits and Elected Consumer Advocate (Take Charge), Mark Wallace, Elizabeth Norden, Sandra Fernandez, George Otto, Stephen Caxton-Idowu, and Cheryl Byers (petitioners), appeal from the dismissal of their amended complaint seeking a writ of *mandamus* and from the denial

of their motion for summary judgment with respect to the amended complaint. For the following reasons, we affirm the dismissal of the amended complaint.[1]

¶ 2                                    I. BACKGROUND[2]

¶ 3      On August 6, 2018, Pat Quinn and Take Charge (original petitioners) submitted petitions with the clerk of the City of Chicago in support of placing on the ballot two binding referendum questions for the citizens of Chicago to consider at the November 6, 2018, general election. The first proposed referendum question generally asked if the office of mayor for Chicago should be subject to a term limit of two, four-year terms "effective for the mayoral election in 2019 and thereafter," while the second proposed referendum question asked if Chicago should establish an elected position for a "Consumer Advocate for taxpayer and consumers."

¶ 4      Objections to the proposed referenda were filed by the objectors-appellees, Brett Allen Czaja and Karen Larson, on August 13, 2018. Therein, the objectors asserted that the referenda petitions were invalid due to violations of various provisions of the Election Code (10 ILCS 5/1-1 *et seq.* (West 2016)) and the Illinois Constitution. The objectors first contended that the two proposed referendum questions were ineligible to appear on the ballot for the November 6, 2018, election because three advisory referenda were already scheduled to appear on that ballot and—subject to exceptions not relevant here—a "rule of three" included in section 28-1 of the Election Code limited to three the total number of referenda that could be placed on the ballot for the voters of Chicago to consider at a single election. *Id.* § 28-1. The objectors also contended that the petitions circulated by the original petitioners improperly contained two proposed referenda

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

[2]Portions of this opinion have been taken from a prior decision issued by this court in this matter. See *Quinn v. Board of Election Commissioners for the City of Chicago Electoral Board*, 2018 IL App (1st) 182087.

on a single petition, in violation of both section 28-3 of the Election Code (*id.* § 28-3) and article III, section 3 of the Illinois Constitution (Ill. Const. 1970, art. III, § 3).

¶ 5    The objections were first addressed at an August 20, 2018, public hearing presided over by the respondents-appellees, The Board of Election Commissioners for the City of Chicago Electoral Board, and its members, Marisel A. Hernandez, Jonathan T. Swain, and William J. Kresse (collectively, the Electoral Board). The matter was referred to a hearing officer appointed by the Electoral Board, and a second hearing was held on August 29, 2018. The original petitioners filed a motion to strike the objections, and the parties thereafter fully briefed that motion, agreeing that only legal issues were presented and that a ruling on this motion would be dispositive. In their briefs, the original petitioners both responded directly to the arguments raised by the objectors and, in the alternative, asserted several facial and as-applied constitutional challenges to the objectors' proposed application of sections 28-1 and 28-3 of the Election Code to this matter.

¶ 6    On September 7, 2018, the hearing officer issued a written report and recommendation, wherein it was recommended that the motion to strike be denied, the objections be sustained, and the two referenda not appear on the November 6, 2018, election ballot. In the order, the hearing officer declined to consider the original petitioners' constitutional arguments, concluding that the Electoral Board lacked the authority to declare a statute unconstitutional or even to question a statute's validity.

¶ 7    In a written order entered on September 12, 2018, the Electoral Board adopted the hearing officer's recommendations and entered a final, written administrative decision that ordered that the two referenda not appear on the ballot for the November 6, 2018, election or on the ballot for any other election. For the same reasons detailed by the hearing officer, the

Electoral Board's written order also declined to consider the original petitioners' constitutional arguments. The Electoral Board's final decision was served upon the original petitioners by e-mail (pursuant to a prior agreement) and hand delivery the same day.

¶ 8    On September 14, 2018, the original petitioners filed a one-count petition in the circuit court seeking both administrative review and a writ of *mandamus*. Naming the Electoral Board and the objectors as respondents-defendants with respect to that portion of its petition seeking administrative review, brought pursuant to section 10-10.1 of the Election Code (*id.* § 10-10.1), the original petitioners sought reversal of the Electoral Board's final administrative decision. Naming only The Board of Election Commissioners for the City of Chicago (Board of Election), as a respondent-defendant with respect to that portion of its petition seeking a writ of *mandamus*, brought pursuant to article 14 of the Code of Civil Procedure (Code) (735 ILCS 5/14-101 *et seq.* (West 2016)), the original petitioners sought to compel the Board of Election to print the two referenda on the ballot for the November 6, 2018, election, or—in the alternative—the ballot for the following election, to be held on February 26, 2019.[3]

¶ 9    The petition filed by the original petitioners was served upon the Electoral Board, the Board of Elections, and the attorney for the objectors on September 17, 2018, by certified mail. The objectors themselves were not served personally by certified mail until September 19, 2018.

¶ 10    Also on September 19, 2018, the objectors filed a motion to dismiss the petition for judicial review, contending that the circuit court lacked subject-matter jurisdiction over the petition due to the original petitioners' failure to strictly comply with the service requirements contained in section 10-10.1(a) of the Election Code, which required service upon all parties

---

[3]The Board of Election Commissioners for the City of Chicago was sued both in its capacity as an electoral board with respect to the request for judicial review (Electoral Board), and as an election authority with respect to the request for a writ of *mandamus* (Board of Election). In this opinion, we use this shorthand to clarify in which capacity we are referring to at any given time.

within five days. 10 ILCS 5/10-10.1(a) (West 2016). The motion to dismiss did not make any reference to the portion of the petition seeking a writ of *mandamus*. In their written reply in support of the motion to dismiss, the objectors again solely attacked the circuit court's subject-matter jurisdiction to consider the portion of the original petitioners' petition seeking judicial review, and again did not make any reference to the portion of the petition seeking a writ of *mandamus*.

¶ 11    On September 25, 2018, the original petitioners filed a motion to file a first amended complaint for a writ of *mandamus*, *instanter*. Therein, the original petitioners contended that no response to the portion of their petition seeking a writ of *mandamus* had yet been filed.

¶ 12    The following day, oral argument was heard on the motion to dismiss. That same day, the circuit court entered a written order granting the motion to dismiss the petition for judicial review of the Electoral Board's decision, on the basis that the failure of the original petitioners to comply with the service requirements contained in section 10-10.1 of the Election Code deprived the court of subject-matter jurisdiction. While the circuit court's order dismissed the petition in its entirety, the circuit court's order made no specific reference to the portion of the petition seeking a writ of *mandamus*, or to the motion seeking to file an amended complaint with respect to that claim.

¶ 13    On September 28, 2018, the original petitioners filed a prior notice of appeal, in which they asserted that they were appealing from the dismissal of both the portion of their petition seeking judicial review and the portion of their petition seeking a writ of *mandamus*. In an opinion filed on November 5, 2018, this court: (1) affirmed the circuit court's dismissal of the portion of the original petitioners' petition seeking administrative review of the Electoral Board's decision under the Election Code; (2) reversed the dismissal of the portion of the original

petitioners' petition seeking a writ of *mandamus*; and (3) remanded for further proceedings solely with respect to the original petitioners' request for a writ of *mandamus*. *Quinn v. Board of Election Commissioners for the City of Chicago Electoral Board*, 2018 IL App (1st) 182087, ¶ 33.

¶ 14    On remand, the circuit court granted the original petitioners' leave to file an amended, two-count complaint for a writ of *mandamus*, and such an amended complaint was subsequently filed on December 17, 2018. The other parties identified above (*supra* ¶ 1) were added as additional petitioners, with these additional petitioners alleged to be voters registered in Chicago that had signed the referenda petitions. Some were additionally alleged to have circulated the petitions or notarized them, while Mr. Caxton-Idawu was also alleged to have "voted in favor of the referendums as an early voter." The caption of the amended complaint identifies only the "[Electoral Board], *et al*." as "respondents-defendants." However, the body of the amended complaint makes clear that the petitioners only sought a writ of *mandamus* against the Board of Election and its members, Marisel A. Hernandez, Jonathan T. Swain, and William J. Kresse.

¶ 15    Substantively, the amended complaint again asserted several facial and as-applied constitutional challenges to the application of sections 28-1 and 28-3 of the Election Code to this matter. The amended complaint also asserted violations of due process and contended that the petitions filed in this matter should not have been stricken because they "substantially comply" with the Election Code.

¶ 16    With respect to the Board of Election and its members, the amended complaint alleged that the board and its members:

> "are responsible for placing referendums on the ballot for the City of Chicago and for
> canvassing and certifying the results of the elections, and thus have the duty and power to

implement the relief sought in this [amended complaint]. During this time period, the Board of Election has included the Take Charge Chicago referendums on the ballot and on its website as referendums that will appear on the November 6, 2018 ballot and in fact the referendums appeared on the ballot."

In light of the constitutional and other arguments asserted in the amended complaint, and the Board of Election's purported duty and authority, count I of the amended complaint asked the circuit court to:

"issue a writ of *mandamus* finding that the Take Charge Chicago referendums are legally valid and requiring the Board of Election to include to [*sic*] canvass and certify the results of the vote for the Take Charge Chicago referendums at the November 2018 general election, or in the alternative, to place the referendums on the February 26, 2019 ballot."

¶ 17 Count II of the amended complaint alleged that section 28-5 of the Election Code "contains a 'holdover' clause providing that if a petition does not include a specific election date (as the Take Charge Chicago petitions do not), if a referendum is stricken from a ballot due to the rule of three [contained in section 28-1 of the Election Code], it should be placed on the ballot of the next regular election not more than one year away." Asserting the same constitutional and other objections described above to the application of section 28-3 of the Election Code to this matter, count II asserted that the petitioners "have a clear right, in the event the Court does not strike down the rule of three as applied [here], to have the Take Charge Chicago referendums appear on the February 26, 2019 municipal election ballot in the City of Chicago."

¶ 18 On December 24, 2018, the objectors responded to the amended complaint by filing a motion to dismiss, pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2016).

Therein, the objectors contended that the amended complaint should be dismissed because *mandamus* should not be a substitute for properly seeking administrative review of an electoral board decision in the circuit court, and in any case, the amended complaint did not establish the required elements for the extraordinary remedy of a writ of *mandamus*.

¶ 19    That same day, the petitioners filed a motion for summary judgment, which essentially reiterated—in more detail—the constitutional and other arguments contained in the amended complaint. On January 1, 2019, the Board of Elections, the Electoral Board, and the two boards' members filed a memorandum in opposition to the amended complaint, in which the circuit court was asked to "deny the Proponents' request for a writ of *mandamus* and enter a final judgment order dismissing the case with prejudice."

¶ 20    A hearing on the motion to dismiss and the motion for summary judgment was held on January 24, 2019, and the matter was continued to January 29, 2019, for presentation of the circuit court's ruling. On that date, after the parties had submitted supplemental briefing, a written order was entered granting the motion to dismiss and denying the motion for summary judgment "[f]or the reasons stated in the record today and during the hearing held January 24, 2019."[4] The petitioners filed a notice of appeal from this decision on February 4, 2019.

¶ 21                                      II. ANALYSIS

¶ 22    On appeal, the petitioners challenge the dismissal of their amended complaint seeking a writ of *mandamus*, as well as the denial of their motion for summary judgment with respect to

---

[4]Transcripts of the proceedings held on January 24 and 29, 2019, were included in an appendix attached to the petitioner's opening brief on appeal. However, these transcripts were not included in the record on appeal filed with this court. As such, we cannot consider the content of these transcripts on appeal. See *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill. App. 3d 848, 852 (2010) (holding that the record on appeal cannot be supplemented by attaching documents to the appendix of an appellate brief).

that petition. Because we find that the petition was properly dismissed for failure to state a cause of action, we need not address the denial of the petitioners' motion for summary judgment.

¶ 23                                    A. Preliminary Issues

¶ 24     We first address two preliminary matters, beginning with the objectors' contention that this appeal should be dismissed as moot.

¶ 25     A case on appeal is moot where the issues raised below no longer exist because events subsequent to the filing of the appeal make it impossible for the reviewing court to grant the complaining party effectual relief. *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423-24 (2010).

¶ 26     In arguing for the application of the mootness doctrine, the objectors note that the November 6, 2018, general election, as well as municipal elections held in Chicago on February 29, 2019, and April 2, 2019, have come and gone. Further contending that it would be an "absurdity" to tabulate and certify any results from the November 2019 election, or place the two referenda questions on any other election ballot, in light of the Electoral Board's still-standing ruling that the referenda questions were ineligible to appear on the November 2018 ballot or any further election ballot, the objectors contend that this appeal is now moot.

¶ 27     As an initial matter, we find that these arguments go more to the merits of the petitioners' claims than present an issue of mootness. Moreover, the amended complaint alleges—and the objectors do not dispute—that the disputed referenda questions actually did appear on the November 6, 2018, election ballot, despite the Electoral Board's ruling. Without expressing an opinion on the merits of the request at this stage, we note again that one form of relief sought in the amended complaint was a "writ of *mandamus* finding that the Take Charge Chicago referendums are legally valid and requiring the Board of Election to include to [*sic*] canvass and

certify the results of the vote for the Take Charge Chicago referendums at the November 2018 general election." If we were to rule in the petitioners' favor, it is at least arguable that this court could—even now—order that such relief be granted. As such, we conclude that this appeal is not moot with respect to that specific request for relief.

¶ 28      However, as an alternative form of relief, the amended complaint also requested a writ of *mandamus* be issued "requiring the Board of Election *** to place the referendums on the February 26, 2019 ballot." Obviously, the circuit court's dismissal of the amended complaint with respect to this alternative request for a writ of *mandamus* is now moot, as the passage of time subsequent to the filing of this appeal makes it impossible for this court to grant effectual relief. *Id.* The petitioners implicitly acknowledge this fact, as on appeal they make no argument that placing the two referenda on the February 26, 2019, ballot remains a viable option.

¶ 29      Instead, the petitioners respond to the objectors' mootness argument by asserting that, in addition to canvassing and certifying the results of the vote for the two referenda at the November 2018 general election, this court may grant effective relief by "ordering that the referendum questions appear on the March 17, 2020, primary election ballot." However, such relief was never requested below, and it is therefore improper for the petitioners to rely upon such an argument on appeal. *In re Marriage of Farrell*, 2017 IL App (1st) 170611, ¶ 24 (" 'It is well settled that an unsuccessful party may not advance a new theory of recovery on appeal' [citation], and that doing so results in forfeiture of that issue ***.").

¶ 30      As such, the only request for relief contained in the amended complaint that remains for this court to consider is the petitioners' request for a "writ of *mandamus* finding that the Take Charge Chicago referendums are legally valid and requiring the Board of Election to include to

[*sic*] canvass and certify the results of the vote for the Take Charge Chicago referendums at the November 2018 general election.”

¶ 31    Second, we consider the objectors’ contention that the petitioners’ request for *mandamus* in this matter is simply an inappropriate method of seeking administrative review of the Electoral Board’s ruling, as *mandamus* cannot and should not be a substitute for properly seeking judicial administrative review of a decision of the Electoral Board. Because we conclude that—at least in certain circumstances—a writ of *mandamus* can be issued to enforce the performance of an electoral board, we reject this argument.

¶ 32    Under the Illinois Constitution of 1970, the circuit courts have original subject-matter jurisdiction over all justiciable matters, with one of two general exceptions being that the circuit courts have only such power to review administrative action as is provided by law. Ill. Const. 1970, art. VI, § 9; *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 27.

> “Whether an agency action is reviewable [by the circuit court] is an issue of statutory construction. [Citation.] Courts must consider whether the statute which confers power on the agency to act indicates that the legislature intended the agency’s decisions to be reviewable. Frequently, the legislature’s intent is clear because the agency’s enabling statute expressly provides for review under our Administrative Review Law [citation].” *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 332-33 (2009).

Where a statute involving an administrative body specifically adopts the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)), “any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not hereafter be

employed" (*id.* § 3-102). See *Outcom*, 233 Ill. 2d at 333 (the "Administrative Review Law eliminates the use of *mandamus*, *certiorari*, injunction and other equitable, statutory and common law actions as a means of reviewing agency decisions, thus providing a single uniform method of review"). However, the Administrative Review Law does not apply unless it has been *expressly* adopted. *Porter v. Illinois State Board of Education*, 2014 IL App (1st) 122891, ¶ 23.

¶ 33 The statutory authority for judicial review of the Electoral Board's decisions is contained in section 10-10.1 of the Election Code, which in relevant part provides that: "Except as otherwise provided in this Section, a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held." 10 ILCS 5/10-10.1(a) (West 2016). While this section specifically refers only to judicial review sought by "a candidate or objector aggrieved by the decision of an electoral board" (*id.*), it has been recognized that—in light of other provisions in the Election Code—this section also provides the method for judicial review to be followed by "proponents" of referenda aggrieved by the decision of an electoral board (*In re Objection of Russo*, 331 Ill. App. 3d 111, 117 (2002)). Illinois courts have consistently held that section 10-10.1 of the Election Code explicitly does *not* adopt the Administrative Review Law in circumstances such as presented here. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008); *Rivera v. City of Chicago Electoral Board*, 2011 IL App (1st) 110283, ¶ 45 (collecting cases).

¶ 34 Nevertheless, our supreme court has concluded that "[a]lthough the applicable provision in section 10-10.1 does not expressly adopt the procedure provided in the Administrative Review Law [citation], it is substantially the same." *Cinkus*, 228 Ill. 2d at 210 (collecting cases). However, this conclusion has been limited to recognizing that the standards of review generally

applicable to judicial review under the Administrative Review Law are also applicable to the judicial review authorized by section 10-10.1 of the Election Code. *Id.* We are aware of no decision concluding that our supreme court's recognition that the administrative review procedure provided in section 10-10.1 is substantially the same as that in the Administrative Review Law also indicates that the restriction on "any other statutory, equitable or common law mode of review of decisions of administrative agencies" contained in section 3-102 of the Administrative Review Law applies to decisions of the Electoral Board.

¶ 35    Indeed, our supreme court has recognized several circumstances in which issuing a writ of *mandamus* directing specific action by an election authority was an appropriate form of relief. *Dooley v. McGillicudy*, 63 Ill. 2d 54 (1976); *Coalition for Political Honesty v. State Board of Elections*, 83 Ill. 2d 236 (1980); *O'Brien v. White*, 219 Ill. 2d 86 (2006). Certainly, there are also instances where courts have rejected efforts to obtain a writ of *mandamus* against an election authority. *Lara v. Schneid*er, 75 Ill. 2d 63 (1979); *In re Objection of Russo*, 331 Ill. App. 3d 111. However, it is clear that there is no bright-line restriction on the possibility of obtaining a writ of *mandamus* against an election authority. Rather, the availability of such relief will depend on the particular circumstances of each case; *i.e.*, the timing of the request, the nature of the arguments supporting the requested relief and the nature of the relief sought, and other considerations. See, *e.g.*, *Lara*, 75 Ill. 2d at 64 ("The court has concluded that, in the circumstances of this case, *mandamus* is not an appropriate remedy."); *Dooley*, 63 Ill. 2d at 58 ("Under the circumstances of this case we conclude that the [writ of *mandamus*] sought by plaintiff was appropriate.").

¶ 36    Notably, our conclusion that—in the absence of the applicability of section 3-102 of the Administrative Review Law to decisions of the Electoral Board—*mandamus* is available despite the possibility of judicial review of the Electoral Board's administrative decisions comports with

the *mandamus* article of the Code. Section 14-108 of the Code specifically provides that "proceedings for *mandamus* shall not be dismissed nor the relief denied because the plaintiff may have another judicial remedy, even where such other remedy will afford proper and sufficient relief." 735 ILCS 5/14-108 (West 2016); see also, *People ex rel. Ryan v. Civil Service Comm'n of the City of Chicago*, 117 Ill. App. 2d 50, 55-56 (1969) (recognizing that, where section 3-102 of the Administrative Review Law *explicitly applies*, section 14-108 of the Code does *not* provide an alternative to administrative review).

¶ 37    In light of the above discussion, we reject the objectors' contention that it is never appropriate to seek a writ of *mandamus* directing specific action by the Electoral Board. The availability and appropriateness of such relief will depend on the particular circumstances presented to the court. We therefore turn to the circumstances presented here.

¶ 38                                    B. Motion to Dismiss

¶ 39    Thus, we now examine the propriety of the circuit court's dismissal of the petitioners' amended complaint.

¶ 40    The circuit court dismissed the amended complaint pursuant to section 2-615 of the Code. A section 2-615 motion challenges the legal sufficiency of the complaint based on defects apparent on the face of the pleading. *Ledeaux v. Motorola Inc.*, 2018 IL App (1st) 161345, ¶ 14. The court accepts as true all well-pleaded facts, as well as any reasonable inferences flowing from those facts. *Id.* In addition to those facts apparent from the face of the complaint, in ruling upon a section 2-615 motion, a court may also consider matters of which the court can take judicial notice and judicial admissions of record. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). Reviewing courts may take judicial notice of any and all statutes and

ordinances which pertain to the case. *Shephard v. Regional Board of School Trustees of De Kalb County*, 2018 IL App (2d) 170407, ¶ 27.

¶ 41 "The critical inquiry in deciding upon a section 2-615 motion to dismiss is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). A court should not dismiss a cause of action under section 2-615 unless the pleadings clearly show that no set of facts can be proven that would entitle a plaintiff to recover. *Id.* Our review of a dismissal order is *de novo*. *Id.* Under this standard of review, we are not bound by the circuit court's reasoning or decision. *State Automobile Mutual Insurance Co. v. Habitat Construction Co.*, 377 Ill. App. 3d 281, 291 (2007).

¶ 42 With respect to a complaint seeking a writ of *mandamus*, we note:

"*Mandamus* is an extraordinary civil remedy that will be granted to enforce, as a matter of right, the performance of official nondiscretionary duties by a public officer. *** *Mandamus* will issue only where the plaintiff has fulfilled his burden [citation] to set forth *every* material fact needed to demonstrate that (1) he has a clear right to the relief requested, (2) there is a clear duty on the part of the defendant to act, and (3) clear authority exists in the defendant to comply with an order granting *mandamus* relief. [Citation.] A 'material fact' is one that 'is significant or essential to the issue or the matter at hand.' [Citation.] Because Illinois is a fact-pleading jurisdiction, a plaintiff is required to set forth a legally recognized claim and plead facts in support of each element that bring the claim within the cause of action alleged. [Citation.] To survive a motion to dismiss for the failure to state a cause of action, a complaint must be both legally and

factually sufficient. A liberal construction of pleadings will not allow a litigant to resort to notice pleading, and conclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim against him." (Emphasis in original.) *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433-34 (2007).

Thus, "[t]o withstand a challenge to the legal sufficiency of a complaint seeking *mandamus*, the complaint must allege facts establishing a clear right of the plaintiff to the desired relief, a clear duty of defendant to act, a clear authority in defendant to comply with the terms of the writ, and the activity sought to be compelled is ministerial and not discretionary." *Newsome v. Prisoner Review Board*, 333 Ill. App. 3d 917, 920 (2002).

¶ 43    Both below and on appeal, the parties have advanced numerous arguments regarding the availability and propriety of a writ of *mandamus* in light of the circumstances presented here, as well as the substantive merits of the constitutional, due process, and other arguments raised by the petitioners' in their amended complaint. We need not address the majority of these arguments to resolve this appeal. Even if we assume that the amended complaint properly pleaded both a clear right of the petitioners to their desired relief and a clear duty on the part of the Board of Elections to perform a ministerial act, we would still conclude that the amended complaint failed to properly plead *clear authority* on the part of the Board of Elections to comply with the terms of the writ for *mandamus* requested in the amended complaint. See *id.*

¶ 44    "Every administrative agency is a creature of statute. Hence, the scope of any agency's authority is restricted to those actions specified by the legislature when creating the administrative agency." *Penn v. County of Peoria*, 2018 IL App (3d) 170162, ¶ 49; *American Federation of State, County & Municipal Employees (AFSCME), Council 31 v. Illinois Labor*

*Relations Board, Local Panel*, 2017 IL App (1st) 160960, ¶ 21 (noting that administrative agencies are analogous to a court of limited jurisdiction and can act only pursuant to the authority conferred on it by statute). As noted above, the only non-moot request for relief contained in the amended complaint asked the circuit court to "issue a writ of *mandamus* finding that the Take Charge Chicago referendums are legally valid and requiring the Board of Election to include to [*sic*] canvass and certify the results of the vote for the Take Charge Chicago referendums at the November 2018 general election."

¶ 45 In support of its contention that the Board of Election and its members had adequate authority to undertake this action, the amended complaint alleged solely that the Board of Election and its members were "responsible for placing referendums on the ballot for the City of Chicago and for canvassing and certifying the results of the elections," and thus "have the clear authority to comply with the writ as the election authority for the City of Chicago." Other than these general assertions, the amended complaint does not allege any specific facts or cite to any statutory provisions granting the Board of Election or its members the authority to retroactively canvass and certify the results of votes cast for or against the two referenda questions at the November 2018 election, which took place nearly three months before the amended complaint was dismissed and after the petitioners failed to properly seek administrative review of the Electoral Board's final, written administrative decision ordering that the two referenda not appear on the ballot for the November 6, 2018, election. Nor have the petitioners provided this court with reference to any relevant statutory authority on appeal.

¶ 46 Therefore, we find that these scant allegations fail to meet the requirement that the petitioners set forth *every material fact* needed to demonstrate that *clear authority* exists in the Board of Election and its members to comply with any order granting the requested relief, even

assuming reasonable inferences flowing from these allegations. See *Rodriguez*, 376 Ill. App. 3d at 433-34. Rather, these allegations amount to no more than conclusions of fact insufficient to properly state a cause of action for *mandamus*. See *id.* at 434.

¶ 47     In light of the above discussion, we find that the circuit court correctly concluded that the amended complaint failed to state a cause of action for a writ of *mandamus*. Because we find our resolution of this question to be dispositive, we need not address the petitioners' appeal from the denial of the motion for summary judgment because a motion for summary judgment assumes that a cause of action has been stated, and a motion for summary judgment should be entertained only when a legally sufficient cause of action has been stated. *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 315 (2007); *Janes v. First Federal Savings & Loan Ass'n of Berwyn*, 57 Ill. 2d 398, 406 (1974). Thus, we need not consider the factual materials presented with respect to the motion for summary judgment or determine if *mandamus* could ever be a proper form of relief in circumstances such as those presented here.

¶ 48                                    III. CONCLUSION

¶ 49     For the foregoing reasons, we affirm the circuit court's dismissal of the petitioners' amended complaint.

¶ 50     Affirmed.