# Illinois Official Reports

## Appellate Court

*Carroll v. Chicago Housing Authority*, 2015 IL App (1st) 133544

| | |
|---|---|
| Appellate Court Caption | DEBRA CARROLL, Plaintiff-Appellant, v. CHICAGO HOUSING AUTHORITY, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-13-3544 |
| Filed | March 24, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-12031; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Law Offices of Michael L. Shacter, of Chicago (Michael Shacter, of counsel), for appellant.<br><br>Chicago Housing Authority, of Chicago (Scott W. Ammarell and Clay S. Rehrig, of counsel), for appellee. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Presiding Justice Simon and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Debra Carroll was a participant in the defendant Chicago Housing Authority (CHA) administrative Housing Choice Voucher Program (HCV program). Four years after she pled guilty to driving under the influence of alcohol (DUI) in violation of section 11-501(a) of the Illinois Vehicle Code (625 ILCS 5/11-501(a) (West 2008)), after notice and an informal hearing, the CHA terminated her eligibility for continued participation in the voucher program for engaging in criminal conduct. She appeals from an order of the circuit court of Cook County affirming the decision to terminate her from the HCV program. On appeal, plaintiff contends that the order terminating her benefits was clearly erroneous. We reverse.

¶ 2    The HCV program provides subsidized housing to low income people in the private market. The program is funded by the United States Department of Housing and Urban Development (HUD) and administered by the CHA. Plaintiff became a participant in this program in October 2002 and received a voucher from the CHA, which subsidized her rent at 2936 North Parkside Avenue, Chicago, and later at 5146 West Dakin Street, Chicago.

¶ 3    In June 2008, plaintiff signed a family obligations form required by the HCV program. The form provided that she would not engage in "violent criminal conduct" or in the abuse of alcohol that threatens the health, safety, or right of peaceful enjoyment of the residents and persons in the immediate vicinity of the premises. This form also provided that plaintiff understood that a violation of her family obligations may result in her family's termination from the program.

¶ 4    On August 22, 2012, the CHA sent plaintiff a letter of intent to terminate her participation in the HCV program. The CHA alleged that she had engaged in the abuse of alcohol that threatened the health, safety or right to peaceful enjoyment of the other residents and persons residing in the immediate vicinity of the premises: "[Specifically,] [plaintiff] has recently been arrested and convicted of Felony Aggravated Driving Under the Influence of Alcohol." The allegation was based on a traffic arrest that occurred on May 11, 2009, resulting in a subsequent plea of guilty to driving under the influence of alcohol.

¶ 5    An informal administrative hearing took place on March 18, 2013. Plaintiff appeared *pro se*. At the hearing, a CHA representative explained that the CHA relies on rules, policies, procedures and regulations found in the Code of Federal Regulations (Code) and in its own administrative plan. The representative noted that when a family is accepted into the HCV program, it must abide by certain family obligations in order to remain in the program, and that assistance may be terminated if the CHA determines, by a preponderance of the evidence, that a household member engaged in criminal activity, regardless of whether that member was arrested or convicted of such activity.

¶ 6    Deidre Birts, a housing specialist who assists in the management of the HCV program, testified that her responsibilities included investigating any program abuse by participants. Birts testified that the family obligations form, which was signed by plaintiff, provides guidelines and regulations for the families to live by. The form is given to the families, and they are briefed on its contents several times throughout their participation in the program.

¶ 7    The CHA introduced into evidence a certified statement of conviction/disposition from the Cook County circuit court clerk certifying that the electronic records showed that on May 11, 2009, plaintiff was charged with violating section 11-501(a) of the Illinois Vehicle Code (625

ILCS 5/11-501(a) (West 2008)) while driving without a valid license, a Class 4 felony. Plaintiff pleaded guilty and was sentenced to 60 days' imprisonment, with credit for time served, placed on 2 years' probation, prohibited from driving and required to do "VIP drops." In June 2011, her probation was terminated as satisfactory.

¶ 8        Plaintiff testified that at the time of her arrest she was living at 2936 North Parkside Avenue as part of the HCV program. At approximately 2 a.m., she received a call from her daughter that her youngest child had not eaten all day. She got in the car with her youngest child's father, who did not drive, and was stopped by the police "about a 15 minute walk from where she lived." Plaintiff explained that the officer stopped her for a cracked taillight. The officer then told her and her passenger to exit the vehicle. The officer searched the car and found an open pint of Bacardi rum under the front passenger seat. Plaintiff testified that the bottle belonged to her passenger and that she did not know it was in her car. The officer learned that her license was suspended and placed her under arrest. Her passenger, who was also arrested, told the officer that plaintiff did not drink. At the police station, plaintiff learned that she was being charged with DUI. Plaintiff told the officer in the lockup that she was not drunk and was not asked to take a sobriety test. Plaintiff stated that her license was suspended because she had numerous unpaid parking tickets.

¶ 9        Plaintiff further testified that because she was five minutes late for court on the DUI matter, the judge forfeited her bond and had her taken into custody. Plaintiff testified that when she went to court again, she was told by an unidentified person that if she pleaded guilty, she would have help with her three children, one of whom was in daycare, and that the trial court does not like it when people drive without a valid license. She further testified that she told her public defender that she was not drinking and that her counsel told this to the trial court, along with the fact that there were no Breathalyzer or sobriety tests performed. Plaintiff insisted that she was not drinking, but she was told to plead guilty so that she could receive probation and go home.

¶ 10        Plaintiff admitted that her license was suspended because of unpaid parking tickets when she was arrested. Plaintiff pled guilty because jail conditions were "nasty" and being incarcerated was keeping her away from her children. She could not recall what the judge said to her regarding pleading guilty because she "passed out." When she returned home, she learned that the apartment she was living in was in foreclosure, and she was moved to the 5416 West Dakin Street address by the HCV program. Plaintiff later completed an alcohol abuse class as part of her sentence, and she has helped others change their lives for the better. Plaintiff further stated that she did not know what her son's father was charged with or if he was convicted.

¶ 11        Hearing officer Joel Skinner, in a written decision, informed plaintiff that the CHA was terminating her HCV assistance based on the testimony, evidence and documents presented at the hearing. He found that plaintiff was arrested on May 11, 2009, for felony aggravated DUI and that a certified statement of conviction was admitted into evidence. The hearing officer noted that in administering the HCV program, the CHA relies on rules, policies, procedures and regulations set forth in the Code, and its administrative plan, and that a family's continued participation in the HCV program requires compliance with the HUD and CHA family obligations, which the family is briefed on and is listed on the voucher and provided to the family in a written packet.

¶ 12  The hearing officer noted that under the HCV program, members of the household must not abuse alcohol in a way that threatens the health, safety, or right of peaceful enjoyment of other residents or persons in the immediate vicinity of the premises, and the CHA will terminate a family's assistance if any member violates the family's obligation. The hearing officer noted that plaintiff disavowed responsibility for the DUI; however, by signing the family obligations form, plaintiff agreed to take responsibility for a direct violation of the family obligation. The hearing officer found that plaintiff's refusal to accept responsibility was a significant consideration in this matter and that he did not find credible plaintiff's testimony that she was going to pick up her son at 2 a.m. because he had not eaten since the afternoon.

¶ 13  Skinner further found that plaintiff's failure to disclose her conviction to the CHA was an active representation that she had not been involved in any criminal activity and showed disregard for the CHA policies and procedures, as well as federal law, and negatively affected her credibility. The hearing officer noted that the CHA may, but is not required to, consider all relevant circumstances in determining whether to terminate the family's assistance, including, *inter alia*, whether the culpable household member was participating in or had successfully completed a supervised alcohol rehabilitation program or otherwise had been rehabilitated successfully. The hearing officer found that plaintiff did not produce documentary evidence that she participated in or completed a supervised alcohol rehabilitation program and plaintiff's denial that she was guilty of DUI cast doubt on the likelihood of favorable conduct in the future. On appeal, the CHA argues that the refusal to accept responsibility for her behavior after pleading guilty "constituted a significant factor in the decision to uphold" the termination of assistance.

¶ 14  On May 7, 2013, plaintiff filed a petition for judicial review by writ of *certiorari* in the circuit court of Cook County, alleging that the decision to terminate her from the HCV program was not in accordance with the law. She subsequently filed, with the aid of counsel, a memorandum in support of her petition, alleging that she pleaded guilty because she believed it was the fastest way to go home. She maintained that during her 11 years in the HCV program, she had one misstep, being late to court for somebody else's mistake, and 4 years later, the CHA determined, without considering mitigating circumstances, that this single conviction was sufficient to terminate her voucher and leave her homeless. Plaintiff claimed there was no proof that she was ever under the influence of alcohol at the time of her arrest.

¶ 15  Plaintiff maintains that the HUD guidelines require the CHA to consider all circumstances relevant to her case, such as all reasonable steps to prevent or mitigate the offending action, citing 24 C.F.R. § 966.4 (2014), and that the HUD Public Housing Occupancy Guidebook requires the public housing authority to consider mitigating circumstances in evaluating information related to screening for public housing. Plaintiff also maintains that the hearing officer misstated her testimony in finding that she did not attend an alcohol abuse class, and she argues that there was no evidence that she exhibited any signs of intoxication or was driving her car erratically.

¶ 16  The CHA responds that pursuant to its administrative plan, it will terminate a family's assistance if any household member has violated the family's obligation not to engage in criminal activity while participating in the HCV program, and that termination for criminal activity does not require a conviction or an arrest. The CHA alleged that, by driving under the influence, plaintiff engaged in extremely dangerous, potentially deadly, criminal activity that affected "everyone in the vicinity," and that her DUI conviction was substantiated by a

certified statement of conviction. The CHA further noted that plaintiff was arrested near her HCV residence and, pursuant to its administrative plan and the Code, it is permitted, but not required, to consider all relevant circumstances in rendering the decision to terminate.

¶ 17 In reply, plaintiff argues that the CHA is required to review mitigating circumstances before terminating a voucher and that failure to do so violates HUD policy. Plaintiff further alleged that all DUI offenders are required to complete an alcohol intervention program, and since her probation was completed satisfactorily, as evidenced by the court record produced at the hearing, and her completion of such a program shows that she is unlikely to have a similar incident in the future.

¶ 18 The circuit court dismissed plaintiff's petition for a writ of *certiorari* in a written order. The court noted plaintiff's contention regarding mitigating circumstances, and that she only pleaded guilty to be released quickly from jail, but the court found that the "mitigating circumstances" were questions of fact already decided by the hearing officer or in a criminal proceeding surrounding her conviction, and that the evidence reasonably supported the conclusion that she had violated the requirements of the HCV program.

¶ 19 The CHA operates under the Illinois Housing Authorities Act (310 ILCS 10/1 *et seq.* (West 2012)), which did not adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)). When the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review, a common law writ of *certiorari* is the appropriate method for obtaining judicial review of the administrative action. *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 335-36 (2009). However, we treat an appeal from the decision rendered in such a proceeding as any other appeal for administrative review. *Landers v. Chicago Housing Authority*, 404 Ill. App. 3d 568, 571 (2010). Thus, we review the decision of the administrative agency and not the determination of the circuit court. *Landers*, 404 Ill. App. 3d at 571.

¶ 20 This appeal involves a mixed question of fact and law, and, accordingly, we will not reverse the agency's decision unless it is clearly erroneous. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390-91 (2001). A decision is clearly erroneous if the record leaves the reviewing court with the firm and definite conviction that a mistake has been made. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395.

¶ 21 Here, plaintiff contends that the CHA hearing officer was required to consider mitigating circumstances and failed to do so. She essentially maintains that the hearing officer found that she had not completed an alcohol abuse intervention program when she, in fact, had done so.

¶ 22 The HCV program is a private housing program governed by section 982.1 (24 C.F.R. § 982.1 *et seq.* (2014)) titled, "Section 8 Tenant-Based Assistance: Housing Choice Voucher Program." Under section 982.551(l), program participants may not engage in "other criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises." 24 C.F.R. § 982.551(l) (2014). Under section 982.551(m), participants "must not abuse alcohol in a way that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises." 24 C.F.R. § 982.551(m) (2014). The voucher form mimics sections 982.551(l) and (m). A violation of either section 982.551(l) or (m) may result in termination from the program. 24 C.F.R. § 982.552(c)(1)(xi) (2014). In determining whether to terminate a participant the CHA "may consider all relevant circumstances" (24 C.F.R. § 982.552(c)(2)(i) (2014)) and in the case of "alcohol abuse by a household member

who is no longer engaged in such behavior, the [CHA] consider [*sic*] whether such household member is participating in or has successfully completed a supervised drug or alcohol rehabilitation program" or "evidence of otherwise having been rehabilitated successfully" (24 C.F.R. § 982.552(c)(2)(iii) (2014)). Section 982.553 directs the CHA to establish standards for termination of assistance if a household member has violated "the family's obligation under [section] 982.551 not to engage in violent criminal activity" (24 C.F.R. § 982.553(b)(2) (2014)) or where a "household member's abuse or pattern of abuse of alcohol may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents" (24 C.F.R. § 982.553(b)(3) (2014)). If the CHA relies on a criminal record for termination of assistance, it "must give the family an opportunity to dispute the accuracy and relevance of that record." 24 C.F.R. § 982.553(d)(2) (2014). The Code directs the CHA to consider whether the family member has participated in and completed an alcohol rehabilitation program or has otherwise rehabilitated successfully and, for this purpose, the CHA may require the participant to submit evidence of the household member's current participation in or successful completion of that program or evidence of otherwise having been rehabilitated successfully. 24 C.F.R. § 982.552(c)(2)(iii) (2014).

¶ 23    Hearing officer Skinner found, without explanation, that plaintiff's testimony concerning her reason for being in the car the night she was arrested (her child had not been fed) was "non-credible." He also found plaintiff's failure to report the arrest and conviction "creates an active representation that [she] had *not* been involved with *any* criminal activity; shows disregard for CHA policies and procedures, *as well as* the federal rule of law; and negatively affects the credibility of [plaintiff's] overall testimony in this case." (Emphases added.) Although plaintiff testified that she completed an alcohol abuse class as part of her probation, the hearing officer found her incredible, noting that she "did not produce any evidence that she had participated in or completed a supervised alcohol rehabilitation program or had otherwise been rehabilitated successfully." The hearing officer concluded that plaintiff "insisted that she was not culpable for the DUI" and this "does not bode well for the likelihood of favorable conduct the [*sic*] future." Plaintiff's testimony that she completed the alcohol class and her satisfactory completion of her probation for the DUI which required completion of an alcohol abuse program was not contradicted. The hearing officer could have required further documentary evidence under section 982.552(c)(2)(iii) of the Code but he did not do so. 24 C.F.R. § 982.552(c)(2)(iii) (2014). The hearing officer dismissed plaintiff's testimony that she successfully completed an alcohol abuse class that was a condition of her probation because of her failure to advise the CHA of her conviction and her failure to take responsibility for her actions.

¶ 24    We have examined the record and are unable to locate any requirement that a program participant timely inform the CHA of any conviction, especially a traffic offense, subsequent to submitting the family responsibilities voucher form. The hearing officer put great weight on the fact that plaintiff did not inform the CHA of her conviction arising out of her early morning traffic arrest. This is not a requirement of the program and considering plaintiff's failure to notify the CHA of the DUI conviction to be an important factor in terminating participation in the program finds no support in the record.

¶ 25    Applicable federal regulations provide that offensive conduct does not have to result in an arrest or conviction to be considered "criminal activity." Termination for "violent criminal activity" is authorized (24 C.F.R. § 982.553(b)(2)(iii) (2014)); however, we find no support for

the conclusion that a singular traffic offense qualifies as "violent" criminal activity under the Code where there is no evidence indicating the underlying facts that formed the basis of the conviction were "violent." Similarly, to the extent the hearing officer was influenced by the classification of the DUI as a felony, we question whether the underlying facts of plaintiff's conviction constitute a felony. The certified record of disposition shows plaintiff pled guilty to a violation of section 11-501(a) of the Illinois Vehicle Code (625 ILCS 5/11-501(a) (West 2008)). Section 11-501(a) prohibits driving or being in actual physical control of a vehicle while under the influence of alcohol. This is a misdemeanor offense. 625 ILCS 5/11-501(c)(1) (West 2008). A conviction under section 11-501(a) is enhanced to a Class 4 felony where the violation occurred during a period in which driving privileges were suspended for a violation of a statutory DUI or a similar provision. 625 ILCS 5/11-501(d)(1)(G) (West 2008). Here, plaintiff testified at the informal hearing that her license was suspended because she had numerous unpaid parking tickets. A license suspension for unpaid parking tickets is not similar to a suspension for violation of section 11-501(a) of the Vehicle Code (625 ILCS 5/11-501(a) (West 2008)). Therefore, where it appears the hearing officer was influenced by the level of the traffic offense, in view of plaintiff's uncontradicted testimony that she knew her license was suspended for unpaid parking tickets, there is a serious question as to whether the conviction was for a felony or a misdemeanor. We seriously doubt whether the hearing officer would have been knowledgeable about the intricacies of the sentencing provisions of the Vehicle Code, and, given plaintiff's spontaneous testimony, there is little likelihood she manufactured a false explanation for her license suspension. The record indicates plaintiff did not grasp the distinction between a misdemeanor conviction and a "felony" conviction, a distraction apparently important to the hearing officer. In any event, the issue of whether the conviction was a misdemeanor or a felony appears to have been of great significance to the hearing officer and could have been resolved through a request for the plaintiff's license abstract.

¶ 26    We also find the hearing officer's conclusion that because plaintiff did not provide documentary evidence that she successfully completed an alcohol abuse program, she did not complete the program was conclusory at best. The CHA cannot arbitrarily ignore plaintiff's statement that she successfully completed a court-required program where she completed her probation satisfactorily and a court record supporting the statement was in evidence. It is axiomatic that a satisfactory termination of probation occurs only after a probationer successfully completes all of the conditions of probation ordered by the court. In addition, section 11-501.01 requires DUI offenders to be professionally evaluated to determine whether alcohol abuse is a problem and to undergo treatment if it is. 625 ILCS 5/11-501.01 (West 2008). The hearing was deemed informal, the plaintiff appeared *pro se*, and plaintiff was not advised that completion of a court-required program was relevant or important to the hearing officer. Given the apparent importance of this issue to the hearing officer, the conclusion that her testimony lacked credibility on this issue where no contrary evidence was presented and the failure to provide a *pro se* plaintiff an opportunity to furnish further evidence to support her statement factors into our firm conviction that a mistake was made.

¶ 27    The hearing officer found plaintiff's testimony incredible based on her failure to accept responsibility for the DUI and her failure to report the conviction, finding these omissions indicated a likelihood of future misconduct. However, there is no requirement in the HCV participant family obligations form or section 982 of the Code (24 C.F.R. § 982.1 *et seq.* (2014)) that required plaintiff to report the DUI conviction after submission of the obligations

form or "to accept responsibility" at any point. There was no evidence plaintiff was ever asked about this incident after it occurred or that she denied that this incident occurred prior to these proceedings. A plain reading of plaintiff's testimony shows that she readily acknowledged the conviction and that she understood that driving under the influence of alcohol is not acceptable. Plaintiff insisted that she was not driving under the influence of alcohol and that she pleaded guilty to avoid staying in jail because she had three children that needed her. The concept of "acceptance of responsibility" is a matter of mitigation considered by a judge at sentencing. Absent citation to a specific rule or regulation, we fail to see how this concept is a relevant consideration in determining whether plaintiff should be terminated from the voucher program. We again note that the testimony concerning the basis for her suspension, unpaid parking tickets, her claim of not being intoxicated and her reason why she pled guilty were not contradicted by any evidence and are plausible explanations that give context to the circumstances of her conviction which, absent contrary evidence, cannot be dismissed outright. The regulations specifically provide that the plaintiff should have been given an opportunity to dispute the accuracy of the nature of the conviction and its relevancy (24 C.F.R. § 982.553(d)(2) (2014)). Her testimony directly addressed the question of whether she engaged in the "abuse of alcohol that threatened the health, safety, or the right to peaceful enjoyment of other residents and persons in the immediate vicinity of the premises" and whether she engaged in "violent criminal conduct" and no evidence was presented that contradicted this evidence.

¶ 28    The relevancy of this four-year-old DUI conviction and its relationship to plaintiff's continued participation in the voucher program has not been demonstrated by the defendant. Plaintiff was stopped 15 minutes away from the premises where she received voucher assistance. Under a generous assumption that this location is included within the "community" contemplated under the Code, in our judgment it is not in the *immediate vicinity* of or on her premises which is defined as the building or complex in which the dwelling unit is located, including the common areas and grounds. 24 C.F.R. § 982.4 (2014). The Code provides that a HCV program participant shall not engage in the abuse of alcohol that threatens "the health, safety, or right to peaceful enjoyment of the premises by other residents." 24 C.F.R. § 982.552, 553 (2014). The family obligations form contains a similar provision except that alcohol abuse shall not occur "in the immediate vicinity of the premises." 24 C.F.R. § 982.551 (2014). There was no evidence presented that plaintiff threatened the health, safety or welfare of the HCV community, based solely on this DUI conviction, or that plaintiff engaged in violent criminal activity or alcohol abuse in the immediate vicinity of her premises. We agree with the CHA that driving under the influence is a potentially dangerous activity to the community at large. However, we see nothing in the record that supports an order of termination based on an incident that occurred four years prior to the hearing, that took place 15 minutes distant from the program premises that plaintiff lived in but has not lived in for four years prior to the informal hearing, with no evidence describing the facts giving rise to the arrest (other than those provided by plaintiff), and no evidence presented that plaintiff did in fact threaten other residents or persons in the vicinity of where plaintiff lived. Furthermore, the defendant has not shown alcohol abuse or violent criminal activity through a single traffic offense and a singular DUI conviction as contemplated by a plain reading of the applicable rules and regulations of the defendant's voucher program.

¶ 29    Other than the singular DUI conviction, there was no evidence that plaintiff had engaged in any other criminal conduct, criminal activity or alcohol abuse. The hearing officer's conclusion that the evidence showed a likelihood of future misconduct based on a single 2009 traffic offense that occurred off-site with no evidence of other offensive conduct that would establish by a preponderance of the evidence that termination of benefits was warranted and justified leaves us with a firm conviction that a mistake has been made.

¶ 30    There was also no consideration given to the fact that the conviction for a traffic-related offense occurred approximately four years before the revocation hearing and concerned an incident unrelated to plaintiff's occupancy of or participation in a housing program administered by the CHA. The official records show that plaintiff was ordered to serve a term of probation and that probation was terminated satisfactorily. There is nothing in the record that informs us that plaintiff was required to inform the CHA of her conviction of a traffic-related offense, not connected to her residency or the voucher program. As such, finding these failures to be matters justifying termination leaves us with a firm conviction that a mistake was made.

¶ 31    The HCV program is clearly an important benefit provided to qualified persons and families by the government. The facts and timing of this proceeding leave us with the firm conviction that a mistake has been made. Given the mitigating circumstances discussed, we find that the decision to terminate plaintiff's assistance in the HCV program was clearly erroneous. We reverse the order of termination and the judgment of the circuit court of Cook County.

¶ 32    Reversed.